## J. W. GOENS v. SUSIE JONES.

Western Section.   November 9, 1925.

No petition for Certiorari was filed.

1. **Appeal and error. Weight of evidence is for the trial court.**
Where there is substantial evidence to support finding of the trial court it will not be disturbed by appellate court.

2. **Animals. Knowledge or notice of vicious disposition.**
When dog having vicious disposition which is known to the owner, is allowed to run at large, the owner is liable in damages to person bitten by the dog.

3. **Animals. Evidence sufficient to warn owner of dog's bad disposition.**
Where owner knew that dog had bitten the dress of a girl and knew dog was in habit of running up to people like he would bite, and that the iceman would not come in the yard when the dog was loose, held, sufficient to warn owner of the bad disposition of the dog.

Appeal in Error from Circuit Court, Shelby County; Hon. A. B. Pittman, Judge.

Affirmed.

B. F. Booth, of Memphis, for plaintiff in error.

Norville & Lyons, of Memphis, for defendant in error.

HEISKELL, J. Susie Jones, the plaintiff below, brought suit before a justice of the peace against J. W. Goens for damages resulting from the plaintiff being bitten by a dog belonging to the defendant. There was a judgment in the Magistrate's court in favor of plaintiff for $250, an appeal to the circuit court where the case was tried by the judge, without a jury, and a judgment rendered in favor of plaintiff for $100, from which the defendant has appealed and assigned errors as follows:

"Assignment I.  There is no competent or material evidence to support the judgment of the court in this case, since the evidence does not show that the dog was vicious or known to

the defendant as being vicious. It does not show scienter. In order to enable the plaintiff to recover there must be some competent evidence or a sufficiency of evidence to warrant the court in finding that the dog was a vicious dog and that this fact was known to the defendant.

"Assignment II. The judgment of the court is against the law and the evidence. The plaintiff was evidently a trespasser on defendant's premises and would not be entitled to that protection of the law had she been in the street or on the public highway. This accident occurred under such circumstances that would require the plaintiff to prove negligence on the part of the defendant."

There are two questions presented by these assignments. Was the plaintiff a trespasser on the premises of the defendant and did the dog have a vicious disposition, which was known to the owner?

The plaintiff testified that she went across a vacant lot to the back of another house to inquire about a hair dresser, and that as she turned to go, after receiving an answer to her inquiry, the dog ran out of the open gate of defendant's back yard into the vacant lot and bit her, and that she ran into the yard of defendant and shut the gate, in order to escape the dog. The testimony of defendant's witnesses tends to show that plaintiff opened the gate and entered the premises of defendant and was then bitten by the dog and to escape ran upon the back porch of defendant.

If we admit the testimony for defendant is the stronger on this point, still there is testimony to support the finding that the dog ran out into the vacant lot. But there is something to be said in favor of the plaintiff's testimony, even in a question of preponderance. Defendant's witnesses were, for the most part, attracted by the screams of the plaintiff, but the dog had attracted plaintiff's attention before she screamed. There is no motive shown for plaintiff entering the premises of defendant, except the one she assigns, to escape the dog. She had found out what she wanted to know from another house and had turned to go. Seeing her shut the gate as she screamed, defendant's witnesses might have thought she had also opened the gate and been bitten by the dog after she entered the back yard. Then seeing her run upon the back porch would not unnaturally create the impression that she had entered the back yard of defendant for the purpose of approaching or entering the house. So perhaps it is not impossible to reconcile the testimony in favor of defendant with that of plaintiff, but however that may be, or however the preponderance may be, there is evidence to support the contention that the plaintiff was bitten by the dog while in the vacant lot, outside of defendant's premises.

This leaves to be considered only the question of the character of the dog and the owner's knowledge thereof. The oldest authority on this subject, to which the court has had access, is found in Exodus 21, 29, by which the liability of the owner of an ox for damages wrought by the horns thereof is stated to depend upon the bad character of the ox and notice of same to the owner. "But if the ox was wont to gore in time past, and it hath been testified to its owner and he hath not kept it in" is the language of the text. While this says nothing about dogs, yet, as an authority, it may be taken as on all fours with the present case. On this question the evidence is conflicting. A number of witnesses testify to the good character of the dog. We will notice the testimony that supports the finding of the lower court.

William Burford testified that he worked for an ice company and delivered ice at the defendant's house in September, 1924, before the plaintiff was bitten; that on his first trip there the dog ran at him, as though to bite him, and after that he would not take ice in the back yard unless the dog was tied; that when the dog was loose in the back yard he left the ice on the front porch; that the defendant's wife told him to leave the ice on the front porch when ever the dog was loose in the back yard, and he did so; that there is a fence which separates the front yard from the back yard.

J. W. Goens, the defendant, after giving the dog a good and harmless character, said on cross-examination: "I never knew the dog to have bitten anybody. He did bite a girl's dress before plaintiff was bitten. If any one came in the yard he would run up to them as if he were going to bite them. If you stood your ground he would stop. We never tied him. He never ran outside."

No doubt the trial judge reasoned that in these latter days no dog, however intelligent, or however analytical his mind, could bite a girl's dress without biting the girl, and this in connection with the testimony of the ice man, who may be assumed to be cool and dispassionate in his testimony, was considered at least to impair the character of the dog for peace and quietude and show that the same had been testified to the owner.

We are not unmindful of the difficulties that beset the owner of a dog. The hardships imposed upon him excite our keenest sympathy. The owner of personal property can find no place where thieves do not break through and steal. He can scarcely call anything his own. Naturally he thinks of a dog for protection. Yet a dog is worthless unless he has a fierce disposition, and if he has a disposition that makes for efficiency as a protection of property, how can he be taught to discriminate between burglars and honest people. If he is kept chained, the thief may calculate the length of his tether. If left at large he may go out the gate, or hurt some one who has a right

to enter. It is one of the most trying positions that confront the citizen in this age of complexities. The defendant in this case has described his dog as possessed of a disposition that comes as near solving this difficult problem as is possible in the affairs of imperfect canine and human nature. He says the dog would bark and, start at one fiercely, as if to bite, but "if you stood your ground he would stop." This is perhaps as near an ideal disposition as a dog or the owner thereof could wish for—the maximum combination of efficiency and harmlessness. The weak point in the combination is, who is to notify the stranger that if he stands and faces the dog he is safe, but if he runs he is bitten? If a notice should be posted setting forth the happy characteristics of the dog, it would destroy his value as against thieves, as a guardian of property and as a deterrent of crime.

Again expressing our sympathy for the difficulties that beset the citizen who would own a dog to protect his precarious property, we can not see our way to sustain the assignments of error in this case. They are therefore overruled and the judgment of the lower court is affirmed.

Clark and Owen, JJ., concur.