W. HAROLD FORTUNE and FORTUNE-WARD
DRUG COMPANY, INC., Plaintiff-in-Error, v. JEAN
E. HOLMES, Defendant-in-Error.—348 S. W. (2d) 894.

Western Section at Jackson.   August 29, 1960.

Certiorari Denied by Supreme Court December 9, 1960.

498

Emmett W. Braden, Thomas F. Johnston, Memphis, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, of counsel, for plaintiff in error.

E. William Henry, Wyeth Chandler, Memphis, for defendant in error.

CARNEY, J. The jury below rendered a verdict in favor of the plaintiff, Miss Jean E. Holmes, in the amount of $12,000 as compensation for personal injuries sustained when she fell from a horse while taking a riding lesson at the riding academy located in Shelby County, Tennessee, operated by the defendants, W. Harold Fortune and Fortune-Ward Drug Company, Inc. Defendants have prosecuted their appeal-in-error from the judgment entered below upon the verdict of the jury.

The accident occurred on October 12, 1957. Plaintiff Miss Jean E. Holmes, aged 38, a secretary to a vice-president of Murdock Acceptance Corporation, had ridden horses some eight or nine years prior to 1957. In September, 1957, Miss Holmes again became interested in horseback riding when she patronized the riding academy owned by defendants in company with a friend, Mr. Underdunk, from Baltimore, Maryland.

Mr. Underdunk was an accomplished horseman and explained to defendants' employee, Mr. Kaiser, that the plaintiff did not know how to ride and that she needed a horse suitable for a beginner. Thereupon, Mr. Kaiser recommended and furnished to the plaintiff the horse, Queen, a mare some 12 or 13 years old. Plaintiff and her friend, Mr. Underdunk, rode their horses across the fields and grounds of the academy for approximately one hour. A few weeks later the plaintiff in company with a lady friend went to the riding academy where they rode approximately fifteen minutes when the rain stopped plaintiff's ride.

At this time the plaintiff decided she should take lessons in horseback riding and made an appointment with the employee, Kaiser, for Saturday, October 12,

1957. The charge for the horse and the lesson was $3 per hour.

On the day in question Mr. Kaiser again recommended and furnished the horse Queen to her for the lesson. Mr. Kaiser helped the plaintiff mount the horse, gave her some preliminary instructions and they rode their respective mounts across the fields and around the track at the riding academy. Toward the latter part of the first lesson the plaintiff and her instructor had ridden back near the barn and were on the track.

The instructor, Mr. Kaiser, suggested that the plaintiff ride in a figure eight while he sat still and watched her ride. Plaintiff made the figure eight on the track and as she approached Mr. Kaiser "Queenie" reared up on her hind legs and Mr. Kaiser said, "Well, kick her and make her go on around again. Show her who is boss."

Thereupon, plaintiff, Miss Holmes, gave the horse a kick and rode around the track again. As she completed the figure eight and was approaching Mr. Kaiser the horse reared again, shook the plaintiff loose from the saddle, reared the second time and the plaintiff fell or was thrown from the horse. As a result of the fall plaintiff fractured the upper end of the femur bone and sustained what is generally known as a broken hip. She was hospitalized twenty-one days and away from work many weeks. No question is made on this appeal as to the amount of the verdict or the extent of her injuries.

The plaintiff's declaration averred the following acts of negligence on the part of the defendants:

1. In providing plaintiff with a horse, which under the circumstances defendants knew or reasonably should

have known to have been unsafe for a person of plaintiff's lack of riding experience.

2. In failing to discover and to warn the plaintiff, prior to furnishing her with said horse, that the animal was unsafe as a mount for a beginner.

3. By said instructor's failure to instruct or assist plaintiff to dismount once the horse's unmanageability became apparent or possible by reason of its actions on said date, and by his improper instruction to plaintiff to kick the horse and to continue riding same.

4. In allowing the instructor, who was inadequately trained for teaching beginners, to conduct plaintiff's riding lesson.

5. By failing to exercise reasonable and ordinary care for the safety of the plaintiff and in failing to take other appropriate precautionary measures to prevent injury to plaintiff as an inexperienced rider.

6. By using improper equipment on the horse when giving plaintiff a riding lesson.

7. By failing to use proper instructional techniques in the conduct of said lesson.

The defendants pleaded the general issue and also pleaded specially that the plaintiff was not a beginner; that Queen was a gentle, easy-gaited, well-behaved mare without any vicious propensities or evil habits; that the instructor did not tell the plaintiff to kick the horse in the side and show her who was boss as the plaintiff had alleged in her declaration; and that plaintiff disobeyed the instructions of the teacher; that she was the author of her own injuries in that she pulled the reins on the horse too hard.

The jury found the issues in favor of the plaintiff and rendered a verdict for $12,000 as above set out. The plaintiffs-in-error have filed three assignments of error. Nos. I and II insist that there was no evidence to support the verdict and that the Trial Court erred in overruling the defendants' general motion for a directed verdict made at the conclusion of all the evidence.

Assignment of error No. III complains of an alleged error made by the Trial Court in charging the jury.

In considering the defendants' motion for a directed verdict made below this court must look at all the evidence, construe it most favorably to the plaintiff, take plaintiff's evidence which supports her claim as true, discard all countervailing evidence and indulge all reasonable inferences to uphold the verdict for the plaintiff. Jarratt v. Clinton, 34 Tenn. App. 670, 241 S. W. (2d) 941; Dunn v. Ralston Purina Co., 38 Tenn. App. 229, 272 S. W. (2d) 479.

Applying this rule to the testimony below there was evidence from which the jury could reasonably find and presumably did find the defendants' employee, Kaiser, guilty of proximate negligence in the following respects:

I. That the instructor Kaiser was guilty of negligence in furnishing to the plaintiff, a beginner, a spirited horse, with a tender mouth, and equipped with a curb bit.

The proof showed that Queen was sufficiently spirited to give even a good horseman a good ride; that Queen was a tender-mouthed horse and the week before the accident had had a sore mouth and/or chin and the instructor did not examine the horse's mouth or chin before furnishing her to plaintiff.

Further there was a direct conflict as to the proper type bit to be used on a horse for a beginner. Plaintiff's proof was that a snaffle bit was the safe and more practical bit for a beginner rider; defendants' proof was that the curb bit which was furnished in the present case was the proper bit to be used.

The snaffle bit is usually metal, hinged in the center, with rings on each side outside the horse's mouth. Such bits are usually used by riders engaged in hunting and jumping and afford less control over the horse than a curb bit.

A curb bit is metal, one piece, curved in shape and accompanied by a metal or leather chin strap. A pull on the reins tends to turn the bit in the house's mouth and at the same time tighten the chin strap. A curb bit is much more severe and offers much more control to the rider over the course and conduct of the horse. Curb bits are usually used by riders in shows.

Mr. Kaiser testified that in his opinion the curb bit was the proper bit for a beginner like Miss Holmes. Plaintiff's expert witness, Mr. Darr, testified just the opposite, that a snaffle bit should be used for beginners. Also the proof showed that on Miss Holmes' first visit to the riding academy, her date Mr. Underdunk, an experienced horseman, commented to Mr. Kaiser that plaintiff should have a snaffle bit for her horse since she was a beginner.

Beginners usually have "heavy hands" on the reins and Mr. Darr testified that "heavy hands" on a tender-mouthed horse especially with a curb bit were likely to make the horse rear up or even throw the rider off backwards.

Mr. Darr further testified that it was not standard instructional procedure to permit a beginner to use a curb bit on the first lesson.

Plaintiff testified she was pulling on the reins, trying to get Queen to stop when she reared up causing her to slip back off the saddle and then fall off the horse.

II. That the instructor, Kaiser, was guilty of proximate negligence in ordering Miss Holmes to kick Queen in the side and show her who was boss after Queen had already reared up with Miss Holmes in his presence. Miss Holmes testified that earlier in the lesson she had told Mr. Kaiser that she could not make Queen mind.

Mr Kaiser's account of the happening of the accident is as follows:

"She was riding in this figure eight and I think I made the remark to her when she came up she was doing fine and she was doing a lot better than she had been, and my mare was standing approximately forty to fifty feet away from hers and out of the way so she would have room to make this figure, and I think she stopped the horse and the horse wanted to go to the barn, and I told her to, 'Kick her a little and show her you are boss and put her back out on the circle,' and she did, and she came back up there, and the next thing I knew, Miss Holmes was hanging on the horse's neck."

The plaintiff insists that the proper instructional procedure on the part of Mr. Kaiser would have been to have Miss Holmes dismount after Queen reared the first time in his presence or to have done something to prevent injury such as putting a lead rope on Queen.

It is true as insisted by attorneys for plaintiff-in-error that Queen was a horse of no vicious habits or propensities; that she had been ridden by children and beginners many times prior to plaintiff's accident without any unfortunate result. Plaintiffs-in-error cite and rely upon our Tennessee cases of Henry v. Roach, 1956, 41 Tenn. App. 289, 293 S. W. (2d) 480; Missio v. Williams, 1914, 129 Tenn. 504, 167 S. W. 473, L. R. A. 1915A, 500; Goens v. Jones, 1925, 1 Tenn. App. 294; and McGregor v. Gill, 1905, 114 Tenn. 521, 86 S. W. 318. None of these cases deal with the question of furnishing of a horse to a beginner to learn to ride and therefore are not controlling of the case at bar.

■ Also we thoroughly agree with the insistence of the plaintiffs-in-error that they were not insurors against any and every accident or injury which might happen to the plaintiff while she was receiving riding instructions. Plaintiffs-in-error cite and rely upon the cases of Evans v. Upmier, 1944, 235 Iowa 35, 16 N. W. (2d) 6; Smith v. Pabst, 1940, 233 Wis. 489, 288 N. W. 780; Reynolds v. Kenwood Riding Club, 1938, 59 Ohio App. 453, 18 N. E. (2d) 612.

The principal case relied upon by the defendants in the case of Smith v. Pabst, 233 Wis. 489, 288 N. W. 780. This was a case wherein the plaintiff was injured when thrown from a horse while taking a riding lesson. However in the Smith case the plaintiff had already taken seven lessons previously. While taking her eighth lesson she fell from her horse and her instructor discussed with her the advisability of remounting the horse. The instructor decided that it was all right since the horse seemed calm and quiet. After she remounted, the horse headed for two trees and plaintiff was unable to steer

him away. She was knocked off the horse by the tree limbs.

Her suit for damages was predicated on two grounds of negligence: (1) That the horse had known vicious propensities and (2) that the instructor was incompetent. The Trial Court directed a verdict for the defendant which was upheld by the appellate court. It is significant to notice that on lessons one and two plaintiff rode the horse with a lead rein being carried by a groom. We think the Smith case is germane to but not controlling of the case at bar.

None of the other cases cited by plaintiffs-in-error relate to suits by pupils injured while taking lessons in horseback riding at a riding academy.

The defendants do not contend that Mr. Kaiser did not owe a duty to exercise reasonable and ordinary care to prevent Miss Holmes from being injured while taking the riding lesson. As we understand their contentions they are: (1) That there is no proof of failure to exercise due care on the part of Mr. Kaiser and (2) that there is no proof that the conduct of Mr. Kaiser, even if held negligent, was the cause of the plaintiff's injuries.

The defendants insist that they furnished the plaintiff a curb bit because Mr. Kaiser thought it was the proper bit for a beginner to use on a horse and he is corroborated by his fellow employees at the riding academy. Also the defendants rely strongly upon the fact that curb bits are used extensively by women riders and children riders and that at the riding academy very seldom if ever was a snaffle bit offered to a rider.

██ ██ The customary way of doing a thing may be a negligent way. City of Kingsport v. Lane, 35 Tenn. App. 183, 243 S. W. (2d) 289. The standard of reasonable care is flexible, some occasions and circumstances requiring higher degrees of care than others. Shuler v. Clabough, 38 Tenn. App. 333, 274 S. W. (2d) 17.

From our review of all the evidence we think reasonable minds might differ as to whether or not the defendants' employee, Kaiser, in this case used reasonable and ordinary care for the safety and welfare of the plaintiff in furnishing her, a known beginner and novice at horseback riding, the tender-mouthed and spirited horse Queen equipped with a curb bit and bridle. Also we think reasonable minds might well differ as to whether or not the defendants' employee, Kaiser, used reasonable and ordinary care for the safety and well-being of his pupil when he instructed her to kick the horse in the side and go around the track again after the horse, Queen, had shown the plaintiff's inability to control her when she reared on her hind legs the first time in his presence. Also we are of opinion that reasonable minds might differ as to whether the defendants' employee, Kaiser, used reasonable and ordinary care for the safety and welfare of his pupil, the plaintiff, in failing to have her dismount and/or in failing to make some effort to control the horse after Queen had reared up in his presence. Likewise, we think reasonable men might differ as to whether these acts and/or omissions on the part of the defendants' employee, Kaiser, proximately caused or contributed to the plaintiff's injuries.

██ Therefore, we feel constrained to hold that all these issues were properly submitted to the jury and the motion of the defendants for a directed verdict was

properly overruled by the Trial Judge. If the evidence for the plaintiff in a negligence case makes the plaintiff's theory more probable than any other, the evidence is sufficient to take the case to the jury and to support a verdict for the plaintiff. Everett v. Evans, 30 Tenn. App. 450, 207 S. W. (2d) 350; International Harvester Co. v. Sartain, 32 Tenn. App. 425, 222 S. W. (2d) 854.

Hence, assignments of error I and II are respectfully overruled.

Assignment of error No. III complains of the action of the Trial Judge in charging the jury as follows:

"It is, however, the duty of persons offering instruction to pupils in horseback riding to use reasonable and ordinary care to furnish their pupil with that which under all of the circumstances of the case, considering the experience or lack of experience of the pupil, would be a safe horse to ride, safe equipment to use on the horse that the pupil is riding, and a competent instructor who uses proper instruction and techniques while instructing pupils."

A review of the record shows that immediately before charging the statement complained of above His Honor the Trial Judge charged the jury as follows: "persons offering instructions to pupils in horseback riding are not insurors of the safety of the pupil taking the riding lesson or receiving the riding instruction."

Immediately following the charge complained of above His Honor the Trial Judge charged as follows:

"* * * It would likewise be the duty of a person offering instruction in horseback riding to inform

the pupil of known propensities of the animal, tendencies toward wildness or unmanageability. It would not be the duty of such a person, however, to inform the pupil, of course, of any unknown alleged vicious propensities or tendencies toward wildness or unmanageability of the horse; that is, where they would not know of it, and there would be no duty to give such information because they did not know it. If persons offering instruction to pupils use reasonable and ordinary care in the particulars just mentioned, then such persons are not guilty of negligence. However, if persons offering instructions to pupils in horseback riding do not use reasonable and ordinary care in the particular matters just mentioned, then the failure of such person to use reasonable and ordinary care in any of the particular matters just mentioned would be an act of negligence in and of itself.''

In addition His Honor the Trial Judge gave the jury two special requests submitted by the defendants as follows:

''Gentlemen of the jury, on behalf of the defendants, the Court gives you the following special request for instruction. Gentlemen, you are instructed that the owner of the horse, 'Queen,' was not an insuror of the suitability of the horse he rents, but he must exercise the care of a reasonably prudent man to provide a horse suitable for the purpose contemplated in hiring, so if you find in this case that the horse, 'Queen,' had no vicious habits that were known, or in the exercise of reasonable and ordinary care should have been known, by its owner when he hired the horse to the plaintiff, but that on the other

hand the horse, 'Queen,' was reasonably fit and suitable for the purposes for which she was hired to the plaintiff, then you should return your verdict for the defendants on that issue.

"Gentlemen, you are instructed that the defendants in this case, operating a riding academy, have the right to choose between different types of bits in general use, and they cannot be held liable because some other type of bit than that adopted by it may be found safer. The question with which you are concerned is, was the type of bit on the bridle that was used on the horse which plaintiff was riding reasonably safe for the purposes for which it was designed."

From a study of the foregoing we are of opinion that the jury was not misled by the portion of the charge complained of in assignment of error No. III and fully understood that the defendants' employee, Kaiser, was chargeable only with reasonable care in the selection of the horse for the plaintiff and in the selection of the type bridle and bit to be used and that the jury fully understood that the defendants were not insurors against any and all accidents which might happen to the plaintiff.

The case of Lively v. American Zinc Co., 1916, 137 Tenn. 261, 191 S. W. 975, construed the word "safe" as used in a statute as meaning reasonably safe. We have read the case of Bruce v. Beall, 1897, 99 Tenn. 303, 41 S. W. 445, cited by plaintiffs-in-error and are of opinion that said case is not controlling of this question.

It follows that assignment of error No. III must be respectfully overruled and the judgment of the lower court affirmed.

A judgment in favor of the plaintiff against the defendants in the amount of $12,000 will be entered in this court together with interest from October 16, 1959, the date of the overruling of the motion for a new trial in the court below. The costs in the court below and in this court will be taxed against the plaintiffs-in-error and their sureties.

Avery, P. J. (W. S.), and Bejach, J., concur.