Mb. Special Justice Ekby L. Jenkins
 

 delivered the opirnon of the Court.
 

 Mrs. Mildred C. Otis, the plaintiff, sued Dr. Elton E. Shouse and Berry Morticians, seeking damages for allegedly being forcibly and wrongfully committed to Eastern State Hospital, a mental institution. The declaration contained a common law count alleging negligence and wrongful conduct on the part of each of the defendants and a statutory count alleging violation by defendants of T.C.A. Sections 33-304, 33-603 and 33-605, which are part of the 1965 Mental Health Law. Compensatory and punitive damages were sought on both counts.
 

 Special pleas were ordered, and the plea of Dr. Shouse admitted the execution of a committing form, and that he wrote a note which was attached to the form, describing Mrs. Otis ’ condition and recommending commitment. Both defendants denied any negligent act or violation of any statute on their part which caused or resulted in plaintiff’s arrest, imprisonment and detention.
 

 At the close of all the evidence the trial judge directed a verdict for the defendant, Berry Morticians, on all counts. Also, a verdict was directed in favor of the defendant, Dr. Shouse, as to the common law count with a verdict being directed in favor of the plaintiff and
 
 *4
 
 against Dr. Shouse on the question of liability as to the statutory count.
 

 Only the issues of compensatory and punitive damages, as they pertained to Dr. Shouse on the statutory count, were submitted to the jury. A verdict was returned in favor of the plaintiff for $35,000.00 compensatory damages and $10,000.00 punitive damages. Plaintiff and defendant Dr. Shouse filed motions for new trials which were overruled, with the court suggesting a remittitur of $20,000.00 as to the compensatory damages and $5,000.00 punitive damages. Plaintiff and defendant, Dr. Shouse, appealed to the Court of Appeals.
 

 Subsequent to the initiation of the appeal Dr. Shouse died, but the suit was revived in the name of Margaret P. Shouse, Administratrix of the Estate of Elton E. Shouse.
 

 The Court of Appeals affirmed the $15,000.00 judgment for compensatory damages and reversed as to the award for punitive damages, holding that it was improper to submit to the jury the question of punitive damages. That Court also reversed the trial judge in directing a verdict for Berry Morticians and remanded the case to the Circuit Court for a new trial against Berry.
 

 Mrs. Otis, Margaret Shouse and Berry Morticians filed petitions for certiorari in this court. Only the petition for certiorari as to Berry Morticians was granted.
 

 The sole question in this Court is whether the trial judge was in error in directing a verdict in favor of Berry Morticians, as to the plaintiff’s common law count alleging negligence and wrongful conduct on its part.
 

 
 *5
 
 The pertinent facts are as follows:
 

 Mildred Otis, a divorcee, married Mr. Otis in February 1963. Dr. Shouse had treated Mrs. Otis for some time and performed an operation on her late in' 1964. After the operation he saw her periodically until April 1965. This was the last date he had seen or examined her.
 

 On the afternoon of September 9, 1965, Dr. Shouse received a call from Mr. Otis who stated that he was concerned about his wife Js behavior. Mr. Otis visited the office of Dr. Shouse that evening and told him about some of their marital difficulties. He advised the doctor that both he and his wife had been to Child and Family Services in search of a solution to their problems; but Mrs. Otis had become highly agitated and refused to return for further meetings. Dr. Shouse recommended that Mr. Otis get her to someone for a psychiatric examination.
 

 On September 10, 1965, Mr. Otis returned to the office of Dr. Shouse. Arrangements were made by Dr. Shouse for Mr. Otis to go to Eastern State Hospital and procure the necessary commitment form. This form was returned to Dr. Shouse who completed it, signed same along with Mr. Otis and attached thereto a written note:
 

 “To Whom It May Concern: Mrs. Mildred Otis has been a patient under my care. Recently she has displayed unusual behavior and has threatened her husband and child with bodily harm. She has also threatened to kill herself.
 

 “Her husband states he had repeatedly tried to get her to seek medical and psychiatric attention voluntarily but she refuses to do this. He is afraid that any further attempt short of temporary commitment will goad her into violent retaliation.
 

 
 *6
 
 “I believe tbe only solution is for tbe patient to be committed for study.”
 

 While at Eastern State Hospital Mr. Otis obtained tbe services of two orderlies. He then called Berry Morticians for an ambulance. Berry’s ambulance with two attendants met with the two orderies and Mr. Otis near the Otis’ home. Upon instructions of Mr. Otis these four men were to wait a few minutes so as to give Mr. Otis time to take his child out of the house and then proceed to the Otis’ home to pick up the plaintiff.
 

 During this conversation one of Berry’s attendants asked Mr. Otis if he had the commitment papers. Mr. Otis replied that he did have such papers and handed an envelope to one of the orderlies. Although the envelope contained the documents necessary for commitment, no one bothered to verify this. In fact, Mr. Berry testified: “As far as I knew it (the contents of the envelope) could have been a funny paper.”
 

 When the ambulance arrived Mr. Otis was in the front yard where he advised the men that his wife was in the bathroom. One of Berry’s employees, with the other men standing behind him, knocked on the bathroom door and when there was no answer the door was pushed open revealing Mrs. Otis standing in the nude about to step into the tub to take a bath. Immediately upon seeing her denuded condition the employee closed the door and advised Mrs. Otis to dress and come out of the bathroom. Mrs. Otis complied with this request.
 

 While Mrs. Otis was being escorted toward the front of the house she broke away from the attendants and ran to a neighbor’s house. She was pursued by the Berry attendants who overpowered her, took her to the ambu
 
 *7
 
 lance and tiien proceeded on to Eastern State Hospital. Mrs. Otis remained at the hospital about four hours. At the request of members of her family and her attorney she was released with the general recommendation that hospitalization was not needed at the present time.
 

 There are three elements which are necessary to the existence of a cause of action for negligence: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) a causal relation between the injury to the plaintiff and defendant’s breach of his duty of care.
 
 Ruth v. Ruth
 
 (1963), 213 Tenn 82, 372 S.W.2d 285.
 

 Mr. Ed Mann, of Mann Mortuaries of Knoxville and President of the State Association of Morticians, testified that the actions of Berry’s employees were up to the standards of practice of morticians and ambulance operators in the community; that ambulance attendants did not customarily read commitment papers if they were represented as such by a member of the family. However, this is not conclusive that no duty to examine the commitment papers was owed by the defendant to the plaintiff for the customary way of doing something may be the negligent way.
 
 Fortune v. Holmes
 
 (1960), 48 Tenn. App. 497, 348 S.W.2d 894;
 
 City of Kingsport v. Lane
 
 (1951), 35 Tenn.App. 183, 234 S.W.2d 289.
 

 Assuming that Berry’s employees owed a duty to the plaintiff to verify that the envelope actually contained what it was represented to contain, i.e., commitment papers, and assuming that the employees were negligent in not looking at the papers, still there can be no basis for recovery.
 

 
 *8
 
 In order for negligence to be actionable it must be the “proximate” cause of plaintiff’s injuries. The omission must be such that had it not happened the injury would not have been inflicted.
 
 DeRossett v. Malone
 
 (1950), 34 Tenn.App. 451, 239 S.W.2d 366. Can it be said in this case that but for Berry’s failure to examine the contents of the envelope Mrs. Otis ’ injury would not have occurred? Definitely not. Had Berry or the attendants examined the papers they would have seen the commitment form had been signed and was accompanied by Dr. Shouse’s note that Mrs. Otis had been under his care and was in need of emergency treatment. This would have confirmed what Mr. Otis had said concerning an emergency and would not have given Berry any notice that the requirements of T.C.A. Sections 33-603 or 33-605 had not been complied with by the doctor.
 

 From all the facts adduced the minds of reasonable men could reach but one conclusion; that being that there was no causal connection between the omissions of Berry and the plaintiff’s injury. Accordingly, we think the trial judge was correct in directing a verdict in favor of Berry Morticians on the common law count. See
 
 Hood v. Waldrum.,
 
 58 Tenn.App. 512, 434 S.W.2d 94 (1968).
 

 The judgment of the Court of Appeals, reversing the trial court’s direction of a verdict for Berry Morticians is reversed, and the action of the trial court sustained. The costs incident to the proceedings in this Court are taxed against the plaintiff in the trial court, Mildred C. Otis.
 

 Dyek, Chief Justice, Ceeson and McCanless, Justices, and Bozeman, Special Justice, concur.