Clarence E. McGEE, Plaintiff-Appellant,

v.

NASHVILLE WHITE TRUCKS, INC., Oscar Felts and Nashville Radiator, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section.

Dec. 22, 1981.

Permission to Appeal Denied by Supreme Court April 26, 1982.

James R. Omer, Nashville, for plaintiff-appellant.

Watkins, McGugin, McNeilly & Rowan, John Brandon and David Steed, Frank Ingraham, Nashville, for Nashville White Trucks, Inc., defendant-appellee.

Trabue, Sturdivant & DeWitt, Ward DeWitt, Jr., and Gary Brown, Nashville, for Oscar Felts d/b/a Nashville Radiator Serv., defendant-appellee.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.

(With the concurrence of participating judges, the original opinion has been abridged for publication.)

The plaintiff, Clarence Edward McGee, has appealed from the Chancellor's decree dismissing his suit against defendant, Nashville White Trucks, Inc., for breach of warranty of a truck, improper repairs and loss of equipment from the truck, and against defendant, Oscar Felts, for negligent repair of a truck radiator.

The memorandum of the Chancellor states:

On May 11, 1979, plaintiff purchased from defendant, Nashville White Trucks, a used reconditioned truck. It had a rebuilt engine carrying a six-months warranty. The radiator had been cleaned as a part of the reconditioning by defendant, Nashville Radiator Service.

Plaintiff drove the truck some two months over-the-road without any problems. On July 28, 1979, plaintiff made a return trip from Ft. Lauderdale, Florida,

to Chattanooga, Tennessee. Two days later he left for New York hauling a trailer load of steel. Before departure, he checked the radiator coolant with his finger and it was full. The first day of the trip he drove to the Davey Crockett Truck Stop just beyond Knoxville and spent the night. The following morning he again checked the radiator coolant with his finger and found it full. He left the motel and drove between twenty-five and forty miles and noticed the heat gauge was jumping. He did not smell any odor or see any steam. He drove approximately one mile and pulled off the shoulder. He got out of the truck, walked to the passenger side, and noticed steam from the engine. He cut the engine off.

Plaintiff was unable to restart the truck and had it towed to Kingsport, Tennessee. The engine was found to be a complete loss from being run without sufficient coolant. An inspection showed the top radiator tank had a small crack that had been repaired with epoxy.

. . . .

## CONCLUSIONS OF LAW

1. Plaintiff failed to carry the burden of establishing negligent preparation (sic) of the radiator by Nashville Radiator Service.

2. Plaintiff failed to carry the burden of establishing defendants' negligence was the proximate cause of the engine failure.

3. Plaintiff failed to carry the burden of establishing breach of warranty, breach of bailment contract, or improper repairs.

Appellant's first issue is general in nature and is comprehended in other issues which will be discussed.

Appellant's second issue is as follows:

The Court erred in failing to find that the defendant, Nashville White Trucks, Inc., breached its contract of sale and all expressed and implied warranties made to the plaintiff in connection therewith.

The bill of sale from White to Plaintiff contained the following language:

Warranty by Detroit Diesel for Engine 6 month replacement parts warranty on Engine Parts.

There is no other warranty provision in the bill of sale.

White insists that the presence of the above quotation in the bill of sale and the absence of any other written warranties conclusively shows that there were no other warranties.

■ A dealer is not liable for breach of a manufacturer's warranty. *Wooten Chevrolet Company v. Allen, et al.*, Unpublished, Tenn.App. Eastern Section, May 23, 1979. However, plaintiff insists that there were express, oral warranties by White. Plaintiff testified as follows:

It was a cabover, newly painted, the engine was rebuilt. Six months warranty or fifty thousand miles, and of course Mike had said when they take trucks in on trade-in or they purchase or buy them there might be some things that needed to be done on it, and assured me if there was anything that we needed to fix or repair it just bring it back and they would take care of it. So we agreed to buy the truck and we bought it for nineteen five.

White responds that evidence of oral warranties is inadmissible to add to the written sales agreement. T.C.A. § 47–2–202, cited by White is as follows:

*Final written expression—Parol or extrinsic evidence.*—Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

(a) by course of dealing or usage of trade (§ 47–1–205) or by course of performance (47–2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. [Acts 1963, ch. 81, § 1 (2–202).]

■ White cites *Somerville v. Gullett Gin Co.*, 137 Tenn. 509, 194 S.W. 576 (1917); however, that case involved a written contract which recited that the machinery was sold subject to the warranty expressed on the back of the contract *and no other, and that no agreement, verbal or otherwise, other than that set forth therein, formed any part of the contract.* No such language appears in the bill of sale in the present case. Absent such language, oral representations or warranties which do not contradict the written contract and which were part of the consideration may be proven and enforced. *E. I. Du Pont de Nemours & Co. v. E. L. Bruce Co.*, 174 Tenn. 148, 124 S.W.2d 243 (1939); *Gibson County v. Fourth & First Nat. Bank*, 22 Tenn.App. 168, 96 S.W.2d 184 (1936).

■ Nashville White also insists that it has no liability upon the written warranty quoted above which imposes a liability upon Detroit Diesel and not Nashville White. Although Nashville White overhauled the engine to which the warranty applied, Nashville White was the authorized distributor for Detroit Diesel; and it must be assumed that Nashville White had the authority to bind Detroit Diesel and was not bound by the warranty it issued as agent. *Hammond v. Herbert Hood Co.*, 31 Tenn. App. 683, 221 S.W.2d 98 (1949).

■ Nashville White also insists, correctly, that there is no liability upon the written warranty because there is no evidence of any defect in the engine. There is some suggestion that the radiator was a part of the engine because it was connected with it by hoses and served an indispensable purpose in keeping it cool. The same argument could be made for the fuel tank or other accessories such as the battery, but such arguments are not sound. An engine is a specific identifiable portion of the vehicle separate and apart from its auxiliary appendages. Moreover, Detroit Diesel was a manufacturer of engines only, and had no connection with the radiator. Nashville White as distributor of Detroit engines would not be presumed to have authority to bind Detroit to a warranty of some component not of its manufacture.

Nashville White next insists that there is no evidence of an oral warranty. The testimony of plaintiff, quoted above, evidences an oral agreement that:

> " . . . there might be some things that needed to be done on it and if there was anything we needed to fix or repair it just bring it back and they would take care of it."

There is no testimony to directly contradict the above agreement.

■ Nashville White next insists that there is no evidence of any breach of any oral warranty. The above quotation is subject to two interpretations, (1) that anything wrong with the truck at the time of the sale would be corrected by Nashville White in its shop, or (2) that if anything went wrong with the truck after the sale, it would be repaired by Nashville White. The second interpretation is unacceptable. It would involve a virtual free maintenance contract on a used truck. Even plaintiff did not so interpret the agreement, for he, himself, performed and financed routine repairs and maintenance without calling on Nashville White to do so. The first interpretation is the more logical and acceptable one, and is adopted by this Court.

The oral agreement, so interpreted, was not breached by Nashville White. If it be said that the crack in the radiator was present at the sale and was something "we needed to repair," then the stated obligation of Nashville White was to repair it when presented to them. It was never presented to them until after the engine damage. Therefore, there can be no liability for engine damage because of failure to repair a crack that was not presented for repair. There is evidence that Nashville White did have the radiator properly repaired in connection with rebuilding the

engine after its failure, but there is no evidence of the cost of such repair or that it was charged to plaintiff.

■ Warranties fall into two general classifications, (1) warranties as to actual condition at a specific time, and (2) warranties of future performance which includes agreements to partly or wholly furnish or compensate for repairs arising independently of actual condition at the specified time. Warranties of the first class may be the basis of an action for incidental damages, but, in the present suit, but there was no such warranty. Warranties of the second class generally support only an action for failure to replace or repair on demand. Generally, incidental damages are not recoverable upon a warranty of the second class such as that involved in the present case.

■ Nashville White next correctly insists that there is no evidence of an implied warranty or the breach thereof. There is of course no implied warranty that used equipment is free from defects or that it will not fail in use. The fact that an engine was severely damaged by the failure of a radiator does not constitute a breach of any implied warranty known to the law or proven as a fact in this record.

Plaintiff-appellant's second issue is found to be without merit.

Appellant's third issue is as follows:

The Court erred in failing to set aside a promissory note for repairs of the engine and tractor sold in that the defendant, Nashville White Trucks, Inc., was obligated by contract to repair the engine and tractor which they expressly warranted for performance for either six (6) months or fifty thousand (50,000) miles.

As already discussed, Nashville White had no obligation to make any repairs except for correcting defects present at the time of sale. Except for the radiator, no such defect is shown, and no expense of repairing the radiator is shown.

Appellant's third issue is without merit.

Appellant's fourth issue is as follows:

The Court erred in failing to find that the evidence proved that the alleged repairs to the radiator were performed in a negligent and improper manner by the defendant and that the plaintiff carried the burden of proof in showing that the negligence of Nashville Radiator Service was the proximate cause of the engine failure.

Appellant's argument in support of this issue is directed solely at the liability of the defendant Felts. The evidence is uncontradicted that Felts was an independent contractor and not an agent of Nashville White. Therefore Nashville White is not considered to be involved in the fourth issue.

The liability of Mr. Felts, the first radiator repairman, involves two factual issues, (1) whether the radiator was negligently repaired and (2) whether the negligent repair was the proximate cause of the engine failure.

As to repair, the alleged negligence consisted of using epoxy plastic to patch a 1½ inch crack in the aluminum upper tank of the radiator when the proper method of repair would have been a "heliarc weld." There is no direct evidence that Mr. Felts actually placed the epoxy on the crack in the radiator, but the circumstantial evidence is overwhelming. There is no evidence that the epoxy was placed on the radiator before it was sent to Felts for routine cleaning and repair, or after it left his shop. There is no evidence that Felts discovered the epoxy when the thorough cleaning and repair was done in his shop. Mr. Felts admits that he uses only epoxy to patch aluminum in his shop which is not equipped to do heliarc welding. When heliarc is needed, Mr. Felts has the welding done in another shop. Felts painted the radiator before returning it to Nashville White. There is no evidence of any occasion on which epoxy might have been applied to the radiator except in Mr. Felts' shop. Therefore, the only substantial probability from the evidence is that the epoxy was applied in Mr. Felts' shop.

316

The overwhelming preponderance of the evidence is that it was negligence to use epoxy instead of heliarc to repair the 1½ inch crack in the position where it was found, i.e., on or near a flange where the tank bolted to the radiator where it was subject to mechanical strain and vibration. There was evidently some misunderstanding as to the measure of care applicable to the repair of radiators. There was considerable effort to elicit testimony as to the "customary method" of repairing radiators.

■ In determining whether a defendant's conduct was characterized by ordinary care, the customary way of doing such acts may be shown, but such evidence is not controlling. *Nashville C & St. L. Ry v. Wade*, 127 Tenn. 154, 153 S.W. 1120 (1913) Ann.Cas. 1914 B, 1020.

■ Proof that a thing is customarily done is not proof that it is not negligent, for the customary way of doing a thing may be a negligent way. *Fortune v. Holmes*, 48 Tenn.App. 497, 348 S.W.2d 894 (1961); *City of Kingsport v. Lane*, 35 Tenn. App. 183, 243 S.W.2d 289 (1951); *Smith v. Fisher*, 11 Tenn.App. 273 (1929).

■ The test of negligence in Tennessee is the average or customary conduct of the *ordinarily prudent man*. *Puryear v. N C & St L Ry*, 4 Tenn. CCA (Higgins) 741. Therefore, the test of negligence in this case is the average or customary conduct of the *ordinarily prudent* radiator repair man. There is no direct evidence of this character in the record.

Les Tomlinson, Service Manager of Nashville White, with thirty-four (34) years experience, testified:

Q. Was the epoxy glue that was on this radiator, was that the customary way of repairing this particular radiator?
A. No.
. . . .
Q. What was the customary way to repair it?
A. Heliarc it.
. . . .
Q. Did Mr. Felts come to Nashville White Trucks?

A. Yes.
Q. Did he look at the radiator tank?
A. Yes.
. . . .
Q. And what did he say about that?
A. He said that we had goofed.

Jack Felts, owner of Southern Radiator Service, testified:

Q. Mr. Felts, is there a—do you feel that in the radiator repair community in 1979, that it would have been proper to have repaired a leak such as the one you see in your picture with epoxy without consulting the owner or the customer first?
A. I don't think it would be.
. . . .
Q. Okay, what I asked you was, is that a customary way to repair a crack of that size, whether or not you tell the customer or not?
A. No, sir. In my business, it wouldn't be customary.
. . . .
Q. Will it hold up as good as a heliarc on aluminum?
A. No, sir.

Charles Pursley, shop foreman of Nashville White, testified:

Q. Were you there when Mr. Felts came and inspected the top tank of the radiator?
A. Yes, sir.
Q. Did Mr. Felts say anything about the cause of the problem at that time?
A. Well, you know, it was obvious it was cracked, and his—of course, I don't remember his exact words, but the essence was that it should not have been repaired in that manner, you know, previously.
Q. Did he say whose fault it was that the radiator had leaked?
A. He said it was theirs.
Q. "Theirs", being Oscar Felts?
A. Well, Nashville Radiator, yes, sir.

Mac Martin, salesman for Nashville White, testified:

Q. Do you remember Mr. Felts making any statements in reference to the crack?

A. Yes.

Q. And what were they?

A. He said that—"Well, I just guess we goofed."

Defendant, Oscar Felts, testified as follows:

Q. What size crack, in your opinion, can be properly or successfully repaired with this type of material?

A. I would say a quarter of an inch—something like that. That's about as large as I ever saw in one.

Q. Do you mean width—width or long?

A. Long.

Q. Are you saying that you wouldn't repair one that was over a quarter of an inch long?

A. Not with epoxy.

. . . .

Q. You wouldn't seal one an inch, or an inch and a quarter, with epoxy, would you?

A. I wouldn't think so.

Q. And the reason you wouldn't, is because that is not the best way to do it. Heliarc is much better; isn't it?

A. I would think so, yes, sir.

Q. Safer, sounder, and last longer?

A. Yes, sir.

. . . .

Q. If it's up where this particular crack was, you wouldn't normally use that epoxy, though, is that correct—where these photographs show it is, you wouldn't normally use it?

A. Not where the photographs show it, no, sir.

Q. You wouldn't normally use it up there? Up there you would normally, as good business practice, use heliarc; is that correct?

A. Yes.

Q. You would send it out to Standard and have it done?

A. Yes, sir.

In cases heard orally by the trial judge without a jury, credibility is generally for the trial judge. However, in the present case, there is the determinative factor that the defendant, himself, admitted both informally and under oath that it was negligence to use epoxy under the circumstances. Absent some showing that defendant was not knowledgeable about good practice in radiator repair, his testimony on the subject cannot be ignored or rejected. In *Osborne v. Frazor*, 58 Tenn.App. 15, 425 S.W.2d 768 (1968), this Court relied upon the testimony of the defendant physician for evidence of the standard of care applicable to his conduct. The situation is not identical in this case, but the cited authority sheds some light upon the present issue.

Since there is no contradictory evidence of the proper standard of care of radiator repairmen, as above discussed, the admissions of the defendant as to fault are deemed to be determinative of the issue of his negligence.

The other question of fact is that of proximate cause, i.e., whether the faulty repair of the radiator was the proximate cause of the damage to the engine. The evidence is uncontroverted that the engine was damaged by overheating which resulted from inadequate operation of the cooling system. There is no evidence of any inadequacy in the cooling system except the crack in the radiator. It is uncontroverted that water and steam were escaping from the radiator when the damage to the engine was first discovered.

The uncontradicted evidence is that diesel engines generate a great amount of heat, that the efficiency of the operation of the cooling system is critical to the safety of the engine, that the pump which circulates the coolant is in the upper part of the engine and would not be able to pump coolant if the level were reduced, and that truck cooling systems operate with seven (7) to fifteen (15) pounds of pressure. It is obvious that pressure would be lost rapidly through a small crack, and it is reasonable to assume that a system operating without its required pressure would lose its efficiency.

Finally, the actual results which did occur are strong corroboration of the testimony of the only expert, Mr. Tomlinson, that the crack was the cause of the damage to the engine.

Of course, it may be surmised that plaintiff was mistaken in thinking he touched coolant when he felt inside the top of the radiator before resuming his journey on the day of the damage. If this were true, then the water level would have been low during the previous day, on which no damage occurred in a full day's travel. The alternatives to accepting the crack as the cause of damage are too speculative to require a disregard of the obvious most probable cause.

Appellee, Felts, insists that he is not liable for consequential damages because of lack of privity between himself and plaintiff. His liability to McGee is not based upon warranty, but upon negligence. As a radiator repairman of long experience and dealings with Nashville White and other dealers, Felts knew or should have known that radiators repaired for Nashville White were for the use of the customers of Nashville White and that negligent repair of a radiator could and probably would result in damage to the engine of the truck in which it was installed, thereby inflicting damage upon the customer, the ultimate user of the radiator.

Accordingly, Felts owed to the customer of Nashville White the duty of careful repair of the radiator which duty was breached by the negligent manner of repair. The damage to the engine was the proximate result of the negligent repair of the radiator and was foreseeable by Felts. Therefore, Felts is liable for the damage to the engine. See 65 C.J.S. Negligence § 101, pp. 1116–1117, and authorities cited therein.

Accordingly, this Court finds the negligence of the defendant Felts or his employees to be the proximate cause of the damage of plaintiff's truck engine.

■ Appellant's evidence of damages for loss of use of the truck is inadequate to support a judgment therefor. There is no evidence of the cost of rental of an equivalent truck, and the only evidence of lost income consists of cash receipts and cash expenditures in connection with previous use. There is no satisfactory evidence of the probability of or availability of employment of the truck during the time in question, nor of the probable net earnings therefrom. Accordingly, the judgment will not include any amount for loss of use of the truck during its repair.

■ Appellant's fifth, and final, issue is as follows:

The Court erred in failing to find that the defendant, Nashville White Trucks, Inc., breached a contract of bailment with the plaintiff.

The uncontradicted evidence shows that, at the time plaintiff's truck was delivered to Nashville White for repair of the damaged engine, a set of chains was hanging on the "headache rack", that the chains were missing when the truck was returned to plaintiff and that it cost $400 to replace them. The truck was parked inside the enclosed lot of Nashville White and there is no evidence of any access to the truck except by Nashville White's employees. This is a classic case for application of T.C.A. § 24–5–111 as follows:

*Negligence of bailee.*—In all actions by a bailor against a bailee for loss or damage to personal property, proof by the bailor that the property was delivered to the bailee in good condition and that it was not returned or redelivered according to the contract, or that it was returned or redelivered in a damaged condition, shall constitute prima facie evidence that the bailee was negligent, provided the loss or damage was not due to the inherent nature of the property bailed. [C.Supp. 1950, § 9746.1; T.C.A. (orig.ed.), § 24–515.]

The chains were an obvious, visible accessory of the truck and were included in the responsibility for its custody.

Plaintiff is entitled to recover from Nashville White for the chains.

The decree of the Chancellor is modified to award judgment to plaintiff against defendant, Nashville White Trucks, Inc. for $400, to award plaintiff judgment against defendant, Oscar Felts, for $9,779.39, and to tax trial costs to both defendants, jointly. Costs of this appeal are taxed against both appellees jointly. The cause is remanded to the Chancery Court for such further proceedings, if any, as may be necessary and proper.

Modified and remanded.

LEWIS and CANTRELL, JJ., concur.