CECIL HENRY, Plaintiff in Error, v. J. L. ROACH et ux., Defendants in Error.—293 S. W. (2d) 480.

Eastern Section. April 9, 1956.

Petition for Certiorari denied by Supreme Court, September 4, 1956.

Wm. B. Felknor, Maryville, for plaintiff in error.

M. H. Gamble, Jr., Maryville, for defendants in error.

HALE, J. We speak of the parties as they appeared in the trial court. Plaintiff sued defendants for personal injuries sustained when he was bitten by a dog on their premises. At the close of his proof the defendants moved for and were granted peremptory instructions on the ground there was no evidence to support a verdict. His motion for a new trial was overruled and he was granted and perfected this appeal.

Our function in passing upon questions of this nature is well known. In Lackey v. Metropolitan Life Ins. Co., 30 Tenn. App. 390, 397, 399, 206 S. W. (2d) 806, 810, it was stated:

"As said so often, this rule requires trial judges and appellate judges, in considering a motion by defendant for a directed verdict, to look to all the evidence, to take as true the evidence for plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any

material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied."

See also Monday v. Millsaps, 37 Tenn. App. 371, at page 386 et seq., 264 S. W. (2d) 6. Many other cases to the same effect could be cited. With that rule in mind we now examine plaintiff's evidence.

Plaintiff engages in electrical and plumbing work. On August 18, 1953, pursuant to a telephone message received at his home he went to the premises of defendants to make an estimate of some work they contemplated doing. He entered the front yard and when he was from half to two-thirds of the way up the walk to their residence, he was charged by the dog in question. The first he knew of its presence was when he heard it growl and saw it charging. He spoke to it in an effort to stop it but when about six feet away it sprang at his throat. He threw up his arms and leaned back in order to protect his throat but the dog bit him in the upper part of the body and knocked him down. He arose and was fleeing when it charged him again, knocking him down in a driveway causing him to skin his arms and knees. He went to a nearby house and washed off the blood, then on to the Health Center and from there to a hospital, where he received first aid treatment and a "shot". He claimed one of his hands became infected and that there were other adverse results. However, the nature and extent of his injuries are not involved in this appeal, although it may be observed that he had a painful and frightening experience.

The dog in question, a male, was tied to a tree in the yard of the defendants by a long rope, so long that it was

enabled to reach the walk. There is some discrepancy as to the description of this dog, it being variously described as a "very large * * wooly dog", and as "some type of German dog" with short brown hair, and as a collie colored "kind of a red, trimmed in white, or rust color with long hair". But regardless of these discrepancies in detail, it is shown in proof that the defendants own only two dogs—a male and a female—and that the dog in question was one of them. Then, too, it was tied on their premises, had been seen there previously on many occasions, which the jury might consider to reflect on its ownership.

In Missio v. Williams, 129 Tenn. 504, 167 S. W. 473, 474, L. R. A. 1915A, 500, the common-law rule was recognized and applied. After referring to the Mosaic law concerning an ox who was " 'wont to push with his horn in time past' " (Ex. 21: 28, 29) the court said:

"But the general rule at this time respecting the liability of owners or keepers of domestic animals for injuries to third persons is that the owner or keeper of domestic animals is not liable for such injuries, unless the animal was accustomed to injure persons, or had an inclination to do so, and the vicious disposition of the animal was known to the owner or keeper. Sherfey v. Bartley, 4 Sneed 58, 67 Am. Dec. 597; Smith v. Causey, 22 Ale. 568; Le Forest v. Tolman, 117 Mass. 109, 19 Am. Rep. 400; Popplewell v. Pierce, 10 Cush., Mass., 509. And where an animal is accustomed or disposed to injure persons, and the owner or keeper has notice or knowledge of that fact, he is liable for any injury which such animal may do to another person. As stated in Sherfey v. Bartley, supra, he is 'bound to have so confined him as to

prevent him from doing mischief.' Loomis v. Terry, 17 Wend., N. Y., 496, 31 Am. Dec. 306. The gist of the action is the keeping of the animal with notice of its vicious disposition, and not the negligence of the owner in its custody. Empire Spring Co. v. Edgar, 99 U. S. 645, 25 L. Ed. 487. And if a person harbors a dog accustomed to bite, or allows it to frequent his premises, he is liable, although not the owner of it. Frammell v. Little, 16 Ind. 251; Marsh v. Jones, 21 Vt. 378, 52 Am. Dec. 67; Wilkinson v. Parrott, 32 Cal. 102. Knowledge of the owner or keeper that the dog is vicious is sufficient to sustain liability, without showing that it had ever bitten any one. Rider v. White, 65 N. Y. 54, 22 Am. Rep. 600; Godeau v. Blood, 52 Vt. 251, 36 Am. Rep. 751.

"Owners or keepers are liable for injuries done by them, even without notice of their vicious propensities, if the animals are naturally mischievous; but, if they are of a tame and domestic nature, there must be notice of the vicious habits. Empire Spring Co. v. Edgar. And where injury is done by domestic animals kept for use or convenience, the rule is that the owner is not liable to an action on the ground of negligence, without proof that he knew that the animal was accustomed to injure persons. Vrooman v. Lawyer, 13 Johns, N. Y., 339. If the latter class of animals are rightfully in the place where the injury is inflicted, the owner is not liable, unless he knew that the animal was accustomed to be vicious. In such case he must confine the animal so as to prevent it from doing mischief. Empire Spring Co. v. Edgar, supra; Sherfey v. Bartley, supra."

This is the law in our state so far as it relates to human beings who have been bitten by a dog. But a more liberal rule applies to animals so injured. By ch. 45 Acts 1859-1860 no scienter was required when sheep were involved, and by ch. 262 Acts 1949, this was broadened to apply to "livestock", the statute, T. C. A. secs. 44-101, 44-102 reading:

"44-101. * * * Where any dog shall kill, or in any manner damage, any livestock in this state, the owner or harborer of such dog shall be liable, in an action for damage, to the owner of such livestock.

"44-102. * * * Ignorance of the vicious habits or character of the dog on the part of the owner shall be no defense in actions arising under sec. 44-101."

The anomaly of not requiring notice of dangerous propensities so far as "livestock" is concerned but requiring it when a human being is concerned is readily apparent and is difficult to understand. However, we must take the law as written and apply the rule in Missio v. Williams, supra.

We have noticed there was evidence of ownership. Now as to the propensity of the dog in question. In the summer of 1949, this dog was on the premises of Mrs. J. W. Hoyt, Jr., an adjoining neighbor, whether alone or accompanied is not shown. Mrs. Hoyt's small son had a little dog—a beagle—and he threw it a cookie. Thereupon the dog in question—some two and one-half feet in height—grabbed the little dog by the neck and began to shake it. Mrs. Hoyt tried to pull the big dog loose and it turned upon and bit her. Her husband had to beat it off with a weed cutter. She said it didn't charge her and that it was her opinion that if she had not taken

hold of it it would not have bit her; that she considered it as much her fault as that of the dog. On another occasion she heard her maid scream and went out to her and saw the dog. Mrs. Roach came out and put it in the basement and then she (Mrs. Roach) discussed with her about calling and getting "a taxi to take the girl down to see about getting her arm fixed". The maid later moved to Detroit and no effort was made to take her testimony. Mrs. Hoyt was not allowed to relate what the maid told her; no effort was made to bring this in the res gestae rule, or to show this was in the presence of Mrs. Roach. While this evidence is not clear, it seems that it might pose some questions for the jury. Why was the dog being put up immediately after this incident? Why was Mrs. Roach under the obligation to get a taxi and send the maid to a doctor?

Mrs. Roach told the plaintiff that this dog had bitten a lady who lived close by. Was this the incident involving Mrs. Hoyt, or was it another? Thus, in the Hoyt incident she had notice of it, or, if it involved another, then she had notice of it. Mrs. Hoyt testified that after the dog bit her the defendants kept it confined. Why? See Goens v. Jones, 1 Tenn. App. 294.

There is another thing of significance. Defendants owned two dogs—the male in question and a female. The latter had come in heat and another dog was brought to breed to her in the cellar while the dog in question was tied outside to a tree in the yard. Mrs. Roach told plaintiff that this may have made this dog "ill" and this was probably the reason it bit him. One of the definitions of "ill" is:

"4, Characterized by bad intention; malevolent; unkind."

Knowing that this dog was in this frame of mind, why did Mrs. Roach tie it with such a long rope as to enable it to reach a person who approached her house at her invitation?

We think there was material evidence of ownership, dangerous proclivities, and scienter.

It is argued there can be no liability on the part of Mr. Roach. He was one of the owners of this dog and kept it on his premises. We think that the notice to his wife might have allowed the jury to draw the inference that it was communicated to him. In the brief for the defendants it is said they "were breeding collie dogs in the City of Maryville", but there is no proof to this effect. At any rate, we are satisfied there was sufficient evidence to take the case to the jury as to both defendants. Defendants will be taxed with the cost incident to this appeal; cost in trial court to abide by the decision in the new trial.

Reversed and remanded.

McAmis P. J. and Howard, J., concur.