**Eulyse E. BLAIR, Plaintiff-Appellant,**

v.

**Edward JACKSON and Roxann Jackson, Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section.

Oct. 1, 1973.

Certiorari Denied by Supreme Court Jan. 7, 1974.

Earl Pat Davis and H. C. Tanner Davis, Memphis, for plaintiff-appellant Eulyse E. Blair.

John J. Thomason, Joseph C. McCarty, III, Memphis, for defendants-appellees Edward Jackson and Roxann Jackson; Thomason, Crawford & Hendrix, Memphis, of counsel.

CARNEY, Presiding Judge.

Plaintiff below, Eulyse E. Blair, has appealed and assigned error to the action of

the lower Court in directing a verdict in favor of the defendants at the conclusion of all the proof. The plaintiff brought suit for personal injuries sustained on June 11, 1970, when a white German Shepherd dog named Casper kept in the defendants' back yard jumped to the top of a four-foot chain link fence and bit or tore a major portion of the plaintiff's left ear from his head. The plaintiff was not in the back yard with the dog but was in the front yard of the defendants' home looking over the fence for plaintiff's ten-year-old son. Plaintiff was standing near the chain link fence when the dog suddenly jumped and bit him as above set out. Plaintiff did not see the dog until after he had been bitten. The defendants contended that the plaintiff Blair actually leaned over the fence and was bitten but the plaintiff testified affirmatively that he was not leaning over the fence. Whether he was or was not leaning over the fence became a question for the jury.

The home of the appellees, Mr. and Mrs. Jackson, faces east on University Street. Immediately to the north of their residence is the residence of Mr. and Mrs. Joe Havens. The Havens residence also faces east on University Street. The distance between the Jackson house and the Havens house is approximately ten feet with a four-foot high chain link fence connecting the two houses at the rear corner of each. There is a gate to the Havens' back yard. A similar fence running from the connecting fence back westward separated the property lines of the two lots.

The plaintiff, Eulyse Blair, resided on University Street about 200 feet south of Mr. and Mrs. Jackson. On the afternoon in question, Mr. Blair had gone up to the home of Mr. and Mrs. Havens looking for his ten-year-old son being of the impression that the son was playing in the Havens' back yard. Plaintiff walked from University Street up the driveway of the Havens' home and then walked between the Havens' home and the Jacksons' home on a well-worn path used, without objection on the part of Mr. and Mrs. Jackson, by people using the gate to enter the Havens' back yard. Neighborhood children often played in the Havens' back yard. Mr. Blair reached the gate entering the back yard of the Havens' property. He did not enter the Havens' back yard but stepped to his left and across the property line a couple of feet over on the property of Mr. and Mrs. Jackson for the twofold purpose of getting a better look into the back yard of the Havens' property for his son and also to avoid a small dog owned by the Havens.

Plaintiff testified that he did not see the dog before he was bitten but only heard a growl at or about the time he was struck from the left rear. There were no signs on the Jackson property to beware of the dog and no signs to keep off the property of the Jacksons, either front or back yard. In 1969, the dog, Casper, had tried to bite the garbage collector, Mr. Bowman, while he was picking up the garbage at the Jacksons' home and oftentimes the dog would lunge at the fence when Mr. Bowman was picking up garbage at the house next door. On at least one occasion, Mr. Bowman discussed with Mrs. Jackson the fact that the dog would bite; that he was afraid of him. Mrs. Jackson insisted to Mr. Bowman that the dog would not bite. On one occasion prior to the time Casper bit the plaintiff, young Eddie Havens was bitten or scratched by the dog, Casper. Mr. Jackson learned about it and discussed the matter with Eddie Havens' parents and was assured that Eddie was not harmed by the incident.

The residence of Mr. and Mrs. Bobby Joe Key backed up to the Jackson and Havens lots. His Honor the Trial Judge excluded testimony by the neighbor, Mrs. Key, that she had seen the dog, Casper, attacking a young girl named Marie Stone through the wire fence while Marie Stone was playing in Havens' back yard very much frightening the child. The Court also excluded the testimony of Mr. Key that the dog, Casper, had been seen to jump a four-foot chain link fence into the back yard of the Keys.

Mrs. Key also testified that sometimes when Casper was barking and lunging at Mrs. Key through the fence, Mr. Jackson would come back and tie the dog up. Mr. and Mrs. Jackson denied this testimony. Mr. Key testified that the dog was "sneaky" and would crouch and creep along the fence and then suddenly spring forward toward the fence and bark.

At the conclusion of all the proof His Honor the Trial Judge held that the plaintiff was an inadvertent trespasser and under the authority of *Bramble v. Thompson,* 264 Md. 518, 287 A.2d 265, and *Missio v. Williams,* 129 Tenn. 504, 167 S.W. 473, the defendants' motion for a directed verdict should be granted.

It was and is the contention of the defendant landowners, Jackson and wife, that they are not liable for injury done by their dog to a trespasser, even though the trespass was inadvertent, so long as their dog was confined on their property. It is the contention of the plaintiff Blair that Mr. and Mrs. Jackson are liable if they harbored or kept an animal which they knew to be vicious, notwithstanding the fact that the dog was kept confined and notwithstanding the fact that the plaintiff was a trespasser. Defendants insist that the law of Tennessee does not recognize the right of a trespasser to recover from the owner of the property if the trespasser is injured by a confined domestic animal, even though the domestic animal may be known to have vicious propensities.

In the case of *McAbee v. Daniel,* 60 Tenn. App. 239, 445 S.W.2d 917, this Court held a 15-year-old defendant liable in damages when the dog which she had on a leash while attending a soap box derby in Jackson, Tennessee, bit the plaintiff. The minor defendant had been warned by the Chief of Police not to let the dog bite anybody and to be careful because of the large crowd and the extremely hot weather. In that case, there was no proof that the dog had ever tried to bite anyone, though there was some evidence that the dog had barked at one of the neighbors. However, there was no proof that the owners of the dog had ever known of the barking and this Court held that the owners did not know the dog was vicious or possessed propensities to bite or injure other people. In *McAbee* we commented upon the observations of the late and much lamented Judge Winfield B. Hale in *Henry v. Roach* (1956), 41 Tenn.App. 289, 293 S.W.2d 480, that under T.C.A. Sections 44–101 and 44–102 the liability of the owner of the dog is absolute when the dog injures other livestock but not absolute when the dog bites people. In view of the legislative enactment, we felt that the rule of *Missio v. Williams* requiring scienter should not be extended. Certiorari was denied by the Supreme Court in *McAbee v. Daniel* on September 3, 1968. It is interesting to note that *McAbee v. Daniel* was decided by the Western Section on March 25, 1968, and on March 29, 1968, the Middle Section rendered the opinion of *Hood v. Waldrum,* 58 Tenn. App. 512, 434 S.W.2d 94. Certiorari was denied by the Supreme Court in the Hood case on November 4, 1968. The Middle Section had no knowledge of our opinion in *McAbee v. Daniel* nor did the Western Section know of the very fine opinion by Judge Todd in *Hood v. Waldrum* until several weeks after it was announced. Hence, neither opinion refers to the other case.

In *Hood v. Waldrum,* Judge Todd reviewed in detail many of the cases in Tennessee relating to dog bites. He announced that the following principles do apply to the common law of liability of dog owners in Tennessee:

"(1) A dog owner who has no reason whatever to expect any mischief from his dog ordinarily is not negligent and not liable for the first mischief which occurs.

(2) The occurrence of mischief, or any other pertinent circumstance, creates a duty upon the owner to exercise ordinary care in keeping with the events or circumstances which have occurred. His failure to exercise ordinary care in this situation is ordinary negligence, for which he may be held liable, unless

(3) The injured party failed to exercise ordinary care under the circumstances, in which event the injured party is guilty of ordinary negligence and cannot recover for ordinary negligence of the dog owner, but

(4) If the dog has exhibited such a fixed or customary or characteristic disposition as to be classified as a dangerous or ferocious dog, then the owner may be guilty of gross or wilful negligence by the mere act of harboring such a dangerous animal upon his premises without adequate safeguards. In such event the owner could be held liable for injury notwithstanding the ordinary negligence of the injured party, however,

(5) Ordinary negligence of the injured party will mitigate damages for the owner's gross negligence, and

(6) If the injured party's negligence was gross or wilful, such as voluntary assumption of a known risk, then the dog owner may not be liable even for gross negligence."

The plaintiff Blair and his witnesses testified that people in the neighborhood regularly used the pathway used by the plaintiff to go across the defendants' yard in reaching the gate into the Havens' back yard with the knowledge of the defendant Jacksons and with no complaint from them for such use. It was for the jury to determine under proper instructions from the Court as to whether the plaintiff was an implied invitee, a licensee or a trespasser.

If the jury believed the testimony of the garbage collector, Mr. Bowman, and the neighbor, Mrs. Maggie Key, the jury could reasonably find that the dog, Casper, was, in fact, a vicious dog and accustomed to biting people and that Mr. and Mrs. Jackson had some knowledge of his vicious propensities. Mr. Key testified that the dog was sneaky and would creep along the side of the fence, then suddenly lunge forward at some person at or near the fence.

On the authority of *Sherfey v. Bartley*, 36 Tenn. 58, we hold that in the present case the jury might reasonably have found in favor of the plaintiff Blair even though he was a trespasser if the jury should find from a preponderance of the evidence that the dog, Casper, was in fact a vicious dog accustomed to bite or attack people and that the defendants, Jackson and/or wife, had knowledge of such viciousness.

It was for the jury to determine whether plaintiff had carried the burden of proof in proving that defendants had knowledge of the vicious propensities of the dog, Casper; whether defendants were negligent in failing to give warning to plaintiff and others that they had a vicious dog in their back yard; and whether defendants were negligent in failing to erect a higher fence to keep said dog and whether plaintiff was guilty of proximate or remote contributory negligence. His Honor the Trial Judge was in error in directing a verdict and assignment of error No. I is sustained. The judgment for defendants will be set aside and plaintiff granted a new trial.

Since this case must be remanded for a new trial, we think it proper that we also rule upon assignments of error II, III, and IV relating to the testimony of the witnesses, Bobby Key and Maggie Key, neighbors of Mr. and Mrs. Jackson. They testified that the dog, Casper, jumped to the top of the four-foot chain link fence on the line between their property and bit Bobby Key on his arm or shoulder while Bobby Key was standing on his own property. Maggie Key testified that she saw the dog, Casper, charge at a young girl named Marie Stone through a fence in such a way as to frighten the child very much and Maggie Key also testified that she saw the dog, Casper, jump a fence in her yard. This proof was all competent for the purpose of showing the viciousness of the dog, Casper. Assignments of error II, III, and IV are sustained.

It results that all of the assignments of error are sustained, the judgment of the lower Court is reversed, and the cause is

remanded for a new trial in accordance with this opinion. The costs in the Court below and in this Court are taxed to the appellees, Mr. and Mrs. Jackson. The costs in the Court below upon the second trial will abide the action of the Trial Judge.

MATHERNE and NEARN, JJ., concur.