# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 30, 2015 Session

## JAMES ANTHONY MOORE v. MICHAEL GAUT[1]

**Appeal from the Circuit Court for Knox County**
**No. 1-98-13     Kristi Davis, Judge**

_____

**No. E2015-00340-COA-R3-CV – Filed December 30, 2015**

_____

Plaintiff James Anthony Moore was at Defendant Michael Gaut's residence to do maintenance on his satellite dish when he was bitten by Defendant's dog, a Great Dane. The dog was in Defendant's fenced-in backyard, Plaintiff was on the *other* side of the fence, and the dog bit Plaintiff on his face. The trial court granted Defendant summary judgment based on its finding that there was no evidence that Plaintiff knew or should have known that the dog had any dangerous propensities. On appeal, Plaintiff argues that the large size of the Great Dane, a breed Plaintiff characterizes as being in a "suspect class," should be enough, standing alone, to establish a genuine issue of material fact as to whether Plaintiff should have known the dog had dangerous propensities. We disagree and affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY AND THOMAS R. FRIERSON, II, JJ., joined.

Robert L. Vogel, Knoxville, Tennessee, for the appellant, James Anthony Moore.

Stephanie L. Prager and Shelley S. Breeding, Knoxville, Tennessee, for the appellee, Michael Gaut.

---

[1] Michael Gaut explains in his brief that the plaintiff misspelled his name as "Gout" in the complaint. This misspelling has often been repeated in the pleadings and other papers in the record. We will use the correct spelling of "Gaut."

# OPINION

## I.

On November 14, 2012, Plaintiff went to Defendant's residence to service a satellite dish on behalf of Plaintiff's employer, Up Dish Communications. According to the complaint, Plaintiff was greeted by Defendant's father, who "spoke at great length about the gentle nature and jovial habits of the dog," which was "in a fenced area in the backyard of the Defendant's residence." The complaint further alleges that "[o]n the insistence of the Defendant's father, the Plaintiff was requested to introduce himself to the dog" and that "[u]pon approaching the dog, the dog jumped up and bit the Plaintiff."

Plaintiff filed suit on March 1, 2013. Defendant answered, denying liability on the ground that he neither knew nor should have known of the dog's dangerous propensities because it had never bitten anyone before. Defendant filed a motion for summary judgment, supported by his affidavit, in which he stated:

> Plaintiff avers that he spoke with my father "at great length about the gentle nature and jovial habits of the dog." However, my father stated to me that such conversation did not take place.

> Plaintiff approached the fence around my backyard where my dog is kept.

> Plaintiff was bitten by my dog.

> My dog was in a fenced-in area in my backyard. It was not necessary for Plaintiff's work to approach or enter my fenced-in backyard.

> My dog has never bitten anyone or attacked anyone.

(Paragraph numbering in original omitted.)

Plaintiff filed a response to Defendant's motion, supported by his affidavit, stating in pertinent part:

> When I arrived [at Defendant's residence] I was greeted by a representative of the defendant. Said representative introduced me to the defendant's dog, a Great Dane. He

2

insisted that I meet the dog and spoke to me at length about the dog and its background.

The dog was large, strong and active.

He never informed me that the dog might act aggressively. He never informed me that the dog might bite.

He told me that the dog was very friendly, but he did not tell me the dog m[a]y scratch or bite in play or to try to get my attention.

There were no signs in the yard indicating that the dog was dangerous or not to touch the dog.

The dog was in a fenced in area in the Defendant's yard.

It was clear to me that the fence was not tall enough to contain the dog. The dog could easily jump up on it and lean out several feet. I observed the dog do this. In fact, it appeared to me that the dog could easily get over the fence if it wanted to.

I had to park my work van, in which were my tools and supplies, next to a section of the fence.

When I went to get my tools and supplies from the van, the dog came running over, jumped up, leaned over the fence and bit my face, cutting open my nose and cheek.

Following a hearing, the trial court granted summary judgment to Defendant, finding and holding as follows:

The first hearing on the summary judgment motion was held on October 10, 2014, at which time the Court indicated that it was inclined to grant the summary judgment motion because the undisputed material facts established that there had been no previous history of the dog biting, attacking, or acting aggressively. Counsel for the plaintiff argued that because of the size of the dog, even playful behavior could cause injury; however, the Court indicated that there was no evidence in

3

the record that the dog had engaged in playful behavior of the type that would cause injury. To give the plaintiff ample opportunity to explore this issue, the Court granted a continuance of the hearing on the motion in order to allow the plaintiff to obtain discovery.

* * *

In the present case, not only has there been no showing of any vicious or mischievous tendencies of behavior on the part of the dog, the evidence in the record affirmatively establishes just the opposite. The defendant's affidavit establishes that the dog had never bitten or attacked anyone. Furthermore, the plaintiff's own complaint alleges that the defendant's father told the plaintiff that the dog was gentle and jovial. . . . [T]here is no evidence in the record to show that the dog engaged in any playful behavior that could be considered dangerous by virtue of its size. There is simply no evidence in the record of any behavior on the part of the dog that would have put the defendant on notice that the dog was dangerous. The plaintiff suggests that the dog's size alone is enough to create a genuine issue of material fact, but to so hold would essentially create a "big dog exception" to the notice requirement. This the Court will not do.

Plaintiff timely filed a notice of appeal to this Court.

## II.

Plaintiff raises the issue of whether the trial court erred in granting summary judgment. As the Supreme Court has recently determined,

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.

4

*     *     *

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.  We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis.  Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial."  Tenn. R. Civ. P. 56.03.  "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record."  *Id.*  When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03.  "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial."  Tenn. R. Civ. P. 56.06.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348.  The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, __ S.W.3d __, 2015 WL 6457768, at \*12, \*22 (Tenn., filed Oct. 26, 2015) (italics and brackets in original).

Moreover, Tenn. Code Ann. § 20-16-101 (Supp. 2015) provides as follows:

5

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

In making the determination of whether summary judgment was correctly granted,

[w]e must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

*Wells Fargo Bank, N.A. v. Lockett*, No. E2013-02186-COA-R3-CV, 2014 WL 1673745, at \*2 (Tenn. Ct. App. E.S., filed Apr. 24, 2014).

## III.

The common law principles governing dog bite cases were set forth by the Supreme Court just over a century ago in *Missio v. Williams*, 167 S.W. 473, 474 (Tenn. 1914):

[T]he general rule at this time respecting the liability of owners or keepers of domestic animals for injuries to third persons is that the owner or keeper of domestic animals is not liable for such injuries, unless the animal was accustomed to injure persons, or had an inclination to do so, and the vicious disposition of the animal was known to the owner or keeper.

The *Missio* Court, noting that "[t]he gist of the action is the keeping of the animal with notice of its vicious disposition," further observed that "[k]nowledge of the owner or keeper that [a] dog is vicious is sufficient to sustain liability, without showing that it had ever bitten any one." *Id.* Our review of subsequent appellate decisions in dog bite cases indicates that the common law has not changed substantially since. *See Henry v. Roach*, 293 S.W.2d 480, 481-82 (Tenn. Ct. App. 1956); *McAbee v. Daniel*, 445 S.W.2d 917, 923 (Tenn. Ct. App. 1968) ("At common-law the owner of a dog is, in the absence of negligence, liable for injuries inflicted by it only where they are due to a vicious propensity of which he has knowledge or notice"); *Hood v. Waldrum*, 434 S.W.2d 94, 99-100 (Tenn. Ct. App. 1968); *McKenna v. Jackson*, No. 01A01-9510-CV-00438, 1996 WL 140496, at *1 (Tenn. Ct. App. M.S., filed Mar. 29, 1996) (citing and applying *Missio*).

In *Alex v. Armstrong*, the Supreme Court observed that a dog's playfulness or mischievousness can be a "dangerous propensity" in addition to a "vicious" temperament:

> [I]n determining whether or not the owner of a dog has notice of its vicious or mischievous propensities, which notice is essential to common law liability, Courts generally hold that acts done by the dog that are dangerous from playfulness or mischievousness are to be considered, as well as acts of viciousness itself. . . .
>
> The reason for the rule that an animal may be of a dangerous propensity from playfulness as well as viciousness is stated, as follows, in 4 Am.Jur.2d, Animals, Section 86, Page 332:
>
>> In this respect, a vicious or dangerous disposition or propensity may consist of mere mischievousness or playfulness of the animal, which, because of its size or nature, might lead to injury, for it is the act of the animal, rather than its state of mind, which charges the owner or keeper with liability.

385 S.W.2d 110, 114-15 (Tenn. 1964) (reversing jury verdicts and dismissing actions because "there is not sufficient evidence to charge the defendants with notice that this dog was of a vicious or dangerous disposition or propensity"); *see also Woodson v. MEG Capital Mgmt., Inc.*, 395 S.W.3d 140, 147 (Tenn. Ct. App. 2012).

In *Fletcher v. Richardson*, 603 S.W.2d 734, 735 (Tenn. 1980), the High Court, again presented with a dog bite case, said:

> In the absence of a statute, the liability of the owner or keeper of a dog for injuries inflicted by it is determined by the general rules governing liability for harm caused by domestic animals which are ordinarily harmless. Under these rules, the owner or keeper of the dog is not answerable for injuries done by it when in a place it had a right to be, unless the dog was in fact vicious or otherwise dangerous, the owner or keeper knew, or under the circumstances should have known, of the dangerous disposition of the animal, and the injuries resulted from the known vicious or dangerous propensity of the animal. The basic key to recovery of damages for injuries caused by a dog is the knowledge of the owner or keeper that the animal is vicious or has mischievous propensities.

(Internal citations omitted); *see also Thompson v. Thompson*, 749 S.W.2d 468, 470 (Tenn. Ct. App. 1988) (third element that a dog bite claimant must prove is "that the defendants knew or should have known about the dog's dangerous propensities").

In 2007, the General Assembly enacted Tenn. Code Ann. § 44-8-413 (2007), pertaining to injuries caused by dogs, which provides as follows in pertinent part:

> (a)(1) The owner of a dog has a duty to keep that dog under reasonable control at all times, and to keep that dog from running at large. A person who breaches that duty is subject to civil liability for any damages suffered by a person who is injured by the dog while in a public place or lawfully in or on the private property of another.
>
> (2) The owner may be held liable regardless of whether the dog has shown any dangerous propensities or whether the dog's owner knew or should have known of the dog's dangerous propensities.
>
> *     *     *
>
> (c)(1) If a dog causes damage to a person while the person is on residential, farm or other noncommercial property, and the

dog's owner is the owner of the property, . . . in any civil action based upon such damages brought against the owner of the dog, the claimant shall be required to establish that the dog's owner knew or should have known of the dog's dangerous propensities.

As far as we can ascertain, there are currently no Tennessee appellate decisions construing this statute. It creates a significant distinction between (1) injuries caused by dogs that are "running at large" – defined at section (e)(2) as "uncontrolled by the dog's owner upon the premises of another without the consent of the owner of the premises or . . . upon a highway, public road, street or any other place open to the public generally" – and that are "in a public place or lawfully in or on the private property of another," and (2) dogs that cause injury while on their owner's property. For cases like this one, where the dog caused injury on its owner's property, the statute clearly retains and codifies the common law requirement that a claimant "establish that the dog's owner knew or should have known of the dog's dangerous propensities." Tenn. Code Ann. § 44-8-413(c)(1).

We agree with the trial court's finding that Defendant, by testifying in his affidavit that his dog never bit or attacked anyone before Plaintiff, has negated the element of knowledge or notice of the dog's dangerous propensity. Plaintiff has presented no evidence that creates a genuine issue of material fact on this element, and has not shown any "specific facts in the record which could lead a rational trier of fact to find in favor of" him as the nonmoving party. *Rye*, 2015 WL 6457768, at *22; *see Eden v. Johnson*, No. 01A01-9603-CV-00141, 1996 WL 474428, at *2 (Tenn. Ct. App. W.S., filed Aug. 21, 1996) (affirming summary judgment where defendants "produced an affidavit in support of their motion for summary judgment attesting to the fact that the dog had never bitten anyone since they had owned him, nor had the dog otherwise exhibited any dangerous propensities" and plaintiffs "offered no evidence to rebut the Johnsons' affidavit as to the issue of notice"). As the trial court observed, all the evidence presented by Plaintiff tends to show that Defendant believed his dog was friendly, gentle, and jovial before the bite occurred. Nor is there any evidence that Defendant was aware of any prior playful or mischievous behavior that could be dangerous. Moreover, it is undisputed that the dog did not get outside the fence, and that Plaintiff is the one who approached the dog.

The trial court also correctly observed that what Plaintiff is asking us to do here is to create a "big dog exception" to the notice requirement established by centuries-old common law and Tenn. Code Ann. § 44-8-413. In his arguments to the trial court and in his appellate brief, Plaintiff states that "it is common knowledge that Great Danes are an extraordinarily large breed" and "submits that *its size alone* placed the Defendant on notice of any dangerous propensity." (Emphasis added). Plaintiff asserts that "Great

9

Danes are a suspect class of dog" because they are "a large and naturally dangerous animal, based on size, weight, and strength." We, like the trial court, decline to craft an exception to the long and well established rules in dog bite cases, based solely on a dog's size or breed.

Defendant asks us to find this appeal frivolous and award him sanctions. We do not find this to be a frivolous appeal.

## IV.

The trial court's grant of summary judgment to Defendant is affirmed. Costs on appeal are assessed to the appellant, James Anthony Moore. The case is remanded to the trial court for collection of costs below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE