IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 5, 2025 Session

## JESSICA MUNOZ v. JOSE SEPULVEDA

**Appeal from the Circuit Court for Wilson County**
**No. 22-CV-304      Michael Wayne Collins, Judge**

_____

### No. M2024-01002-COA-R3-CV

_____

A woman sued a dog owner for injuries caused by the owner's dog biting her while she was on the owner's property. The trial court granted summary judgment to the dog owner based on the owner's testimony that the dog had never bitten anyone and had never exhibited a dangerous propensity to bite. We have concluded that the woman presented evidence creating a genuine issue of material fact as to the dog owner's credibility regarding his knowledge of the dog's dangerous propensities. Therefore, we reverse the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and CARMA DENNIS MCGEE, J., joined.

Nathan H. Mauer, Nashville, Tennessee, for the appellant, Jessica Munoz.

Chad A. Massey, Murfreesboro, Tennessee, for the appellee, Jose Sepulveda.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

In 2021, Jose Sepulveda owned lambs and chickens that he advertised for sale on Facebook Marketplace. He also owned a dog, a Great Pyrenees named Suki, that often protected these animals. On July 16, 2021, Jessica Munoz and her husband, Hugo Novoa, went to Mr. Sepulveda's residence to purchase a lamb.[1] After exiting her vehicle, Ms.

_____

[1] In her complaint, Ms. Munoz claimed that she and her husband went to Mr. Sepulveda's home to purchase lamb meat that he advertised for sale. Mr. Sepulveda initially testified that he sold live animals, but he later admitted that he agreed to slaughter a lamb for Ms. Munoz. He further admitted that he did not

Munoz noticed an area enclosed by a rectangular wire fence where Mr. Sepulveda was keeping at least two dogs, including Suki, and various other animals. Ms. Munoz approached the enclosure to look at a "beautiful and white" puppy that caught her attention. As Ms. Munoz stood at the fence observing the puppy, Suki bit her on her right hand.

Ms. Munoz filed a complaint against Mr. Sepulveda on June 21, 2022, alleging that he was liable for her injuries under Tenn. Code Ann. § 44-8-413(c)(1). Mr. Sepulveda filed an answer and, after the parties engaged in discovery, he filed a motion for summary judgment. He argued that he was entitled to summary judgment because Ms. Munoz could not establish the requirement in Tenn. Code Ann. § 44-8-413(c)(1) that he knew or had reason to know that Suki had a dangerous propensity to bite. As support for the motion, Mr. Sepulveda relied on his deposition testimony that the dog "had never bitten anyone or exhibited dangerous propensities."

Ms. Munoz filed a response arguing that the motion for summary judgment should not be granted because a dispute of material fact existed regarding the credibility of Mr. Sepulveda's denial that he knew or had reason to know the dog had dangerous propensities. To support her argument, Ms. Munoz attached the complete transcript of Mr. Sepulveda's deposition and pointed to various statements he made about Suki's past behavior. She contended that these statements constituted circumstantial evidence that Mr. Sepulveda knew the dog was protective and likely to bite strangers approaching the property. Ms. Munoz further supported her argument by producing a Declaration of Maria Mendoza, another former customer of Mr. Sepulveda. In her declaration, Ms. Mendoza recounted an occasion where she went to Mr. Sepulveda's property to purchase a goat. On this occasion, Ms. Mendoza approached the fenced-in area, and the dog growled and showed its teeth at her. According to Ms. Mendoza, Mr. Sepulveda observed this incident.

After hearing arguments on the motion, the trial court entered an order granting summary judgment to Mr. Sepulveda. The court based its determination on its finding that "the record is absent of proof that the dog had, or the owner had knowledge that the dog had a propensity, was accustomed, or had an inclination to bite as there is no proof the dog had ever done so or ever attempted to do so." The court further found that Ms. Munoz "ha[d] no evidence that her specific injury arose from the dog's propensity to bite."

Ms. Munoz filed a motion requesting that the court alter or amend its judgment pursuant to Tenn. R. Civ. P. 59.04, arguing that the court failed to properly consider the evidence she presented in the light most favorable to her as the nonmoving party. She further argued that she presented evidence that her injury was a consequence of the dog's

_____

have a permit or license to slaughter animals or to sell meat, but he would slaughter animals when asked to do so by those who purchased animals from him. *See* Tenn. Code Ann. §§ 53-7-201 to -212 ("Tennessee Meat Inspection Act") (detailing various licensure and inspection requirements for slaughtering livestock and selling meat).

alleged dangerous propensities, i.e., arising from the dog's protectiveness and aggression towards strangers. The trial court denied the motion as "not well taken," and Ms. Munoz timely appealed.

On appeal, Ms. Munoz presents two issues for our review, which we consolidate and restate as follows: whether the trial court erred in granting summary judgment to Mr. Sepulveda.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* The present case involves a witness credibility issue. Witness credibility is an issue of fact that, like other issues of fact, "'must be construed in favor of a nonmoving party when considering a motion for summary judgment.'" *Sherrill v. Souder*, 325 S.W.3d 584, 590 n.3 (Tenn. 2010) (quoting *Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 320 (Tenn. 2007)); *see also Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin*,

271 S.W.3d at 83 (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

ANALYSIS

More than a hundred years ago, the Tennessee Supreme Court described the liability of dog owners for injuries their dogs cause to third persons as follows:

[T]he general rule . . . respecting the liability of owners or keepers of domestic animals for injuries to third persons is that the owner or keeper of domestic animals is not liable for such injuries, unless the animal was accustomed to injure persons, or had an inclination to do so, and the vicious disposition of the animal was known to the owner or keeper.

*Missio v. Williams*, 167 S.W. 473, 474 (Tenn. 1914). In other words, if "an animal is accustomed or disposed to injure persons, and the owner or keeper has notice or knowledge of that fact," *id.*, the common law imposes absolute liability on the owner. *Fletcher v. Richardson*, 603 S.W.2d 734, 735 (Tenn. 1980). Therefore, under the common law, the owner's knowledge "that the dog is vicious is sufficient to sustain liability, without showing that it had ever bitten any one." *Henry v. Roach*, 293 S.W.2d 480, 482 (Tenn. Ct. App. 1956).

In 2007, the General Assembly enacted Tenn. Code Ann. § 44-8-413 to address civil liability for injuries caused by dogs. This statute is often referred to as "the Dog Bite Statute" and provides that a dog owner may be held liable for injuries caused by his or her dog "regardless of whether the dog has shown any dangerous propensities or whether the dog's owner knew or should have known of the dog's dangerous propensities." Tenn. Code Ann. § 44-8-413(a)(1)-(2). Unlike the common law, the Dog Bite Statute imposes strict liability on the owner of a dog "if the owner's dog injures a person because the owner failed to exercise reasonable control over the dog or the dog is running at large." *Searcy v. Axley*, No. W2017-00374-COA-R3-CV, 2017 WL 4743111, at *4 (Tenn. Ct. App. Oct. 19, 2017) (citing Tenn. Code Ann. § 44-8-413(a)(1)-(2)). The statute, however, provides several exceptions, including the residential exception. *See* Tenn. Code Ann. § 44-8-413(c)(1).

The residential exception states, in pertinent part, as follows:

If a dog causes damage to a person while the person is on residential, farm or other noncommercial property, and the dog's owner is the owner of the property, or is on the property by permission of the owner or as a lawful tenant or lessee, in any civil action based upon such damages brought against the owner of the dog, the claimant shall be required to establish that the dog's owner knew or should have known of the dog's dangerous propensities.

- 4 -

*Id.* We have previously interpreted this statutory provision and held that, in cases where a dog injures a person at the home or on the property of the dog's owner, "the statute clearly retains and codifies the common law requirement that a claimant 'establish that the dog's owner knew or should have known of the dog's dangerous propensities.'" *Moore v. Gaut*, No. E2015-00340-COA-R3-CV, 2015 WL 9584389, at *5 (Tenn. Ct. App. Dec. 30, 2015) (quoting Tenn. Code Ann. § 44-8-413(c)(1)).

It is undisputed that Ms. Munoz's claim falls under the purview of section (c)(1) of the Dog Bite Statute because Mr. Sepulveda's dog allegedly injured her while on his property. Thus, the parties agree that, to recover for her injuries, Ms. Munoz must prove that Mr. Sepulveda knew, or should have known, that the dog had dangerous propensities. Our task then is to determine whether summary judgment on this issue was appropriate.

Mr. Sepulveda's statement of undisputed facts supporting the motion for summary judgment contains the following pertinent facts: (1) that Suki had never bitten anyone or exhibited dangerous propensities, and (2) that there was no proof to show that Suki had previously bitten anyone or had exhibited dangerous propensities. To support these facts, he attached a portion of the transcript of his deposition where he testified that, prior to the incident with Ms. Munoz, Suki had not bitten anyone. He further testified that Suki did not bark at strangers and that he was not concerned that the dog might bite a stranger. These facts, if true, show that Mr. Sepulveda did not know or should not have known that the dog had a dangerous propensity.

The burden then shifted to Ms. Munoz to "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; s*ee Rye*, 477 S.W.3d at 264 (holding that a moving party shifts the summary judgment burden to the nonmoving party by "demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim"). In her response opposing the motion for summary judgment, Ms. Munoz challenged the credibility of Mr. Sepulveda's denials that he had any reason to know that Suki had dangerous propensities. She supported her assertion by submitting additional excerpts from Mr. Sepulveda's deposition testimony and identifying several statements as inconsistent with his general denials of knowledge. For instance, although Mr. Sepulveda denied ever being concerned that Suki might bite a stranger, he admitted that, prior to the incident with Ms. Munoz, he placed a "Beware of Dog" sign on his property as "a warning for the animal" because "[t]here were a lot of children" at the church on the property adjoining his. He further admitted that Suki was protective "with the animals" on his property and, when he moved from the property following the incident with Ms. Munoz, he left the dog at the property. Animal control officers came to get Suki after receiving a call from a person at the church next door. When animal control contacted Mr. Sepulveda about Suki, he informed them that he did not want the dog back. Thus, animal control euthanized the dog. Although he left Suki on the property when he moved, Mr. Sepulveda acknowledged that he gave his other dog to a

friend. When asked why he did not also give Suki to that friend, Mr. Sepulveda responded that Suki "didn't know how to be with other people."

Ms. Munoz further challenged Mr. Sepulveda's denial that he had no reason to know of the dog's dangerous propensities by pointing to his testimony denying that he ever saw the dog growl at strangers. To contradict this statement, Ms. Munoz submitted the declaration of Maria Mendoza, in which Ms. Mendoza stated that she went to Mr. Sepulveda's home in November or December 2020 to purchase a goat. When she arrived at Mr. Sepulveda's property, she observed him standing outside "near his animals and the large white dog." Ms. Mendoza further stated that, as she approached the fence "to look at the goats[,] the white dog came towards me and began growling and showing its teeth in an aggressive manner." According to Ms. Mendoza, Mr. Sepulveda was present and "aware that the dog acted this way."

Mr. Sepulveda does not dispute the evidence submitted by Ms. Munoz but, as he did in the trial court, he argues that this evidence does not create a genuine issue of material fact regarding his statement that he did not know or have reason to know that the dog was inclined to bite strangers. He contends that, at most, the evidence shows that he knew or had reason to know that Suki had a propensity or inclination to growl at strangers. We discern from Mr. Sepulveda's argument here that he believes the only evidence sufficient to establish that he knew or should have known that Suki might bite a stranger—the specific type of harm from which Ms. Munoz's cause of action arises—would be evidence that the dog had previously bitten someone or almost bitten someone. We must respectfully disagree.

Mr. Sepulveda relies on *Searcy v. Axley*, No. W2017-00374-COA-R3-CV, 2017 WL 4743111, (Tenn. Ct. App. Oct. 2017), to support this argument. His reliance, however, is misplaced. There, the plaintiffs' son sustained injuries from a dog bite that occurred at the home of the dog's owners. *Id.* at *1. The dog's owners filed a motion for summary judgment, arguing that the dog had not bitten anyone prior to this incident and that the plaintiffs could not show that the owners knew or should have known of their dog's dangerous propensities. *Id.* The trial court agreed and granted summary judgment. *Id.* at *2.

On appeal, the *Searcy* court affirmed. In making its decision, the court focused on the plaintiffs' burden to prove that the dog's owners knew or should have known of their dog's dangerous propensities and stated as follows:

> This court has previously described this burden as requiring that not only the dog owner knew of the dangerous disposition of the dog, but that the "'the injuries result[ed] from [such] known vicious tendencies or propensities.'" *Mayes* [*v. LeMonte*], 122 S.W.3d [142,] 145 [(Tenn. Ct. App. 2003)] (quoting *McAbee* [*v. Daniel*] , 445 S.W.2d [917,] 925 [(Tenn. Ct. App. 1968)]). Thus,

"it must be shown [by the nonmoving party] that the animal had vicious or dangerous propensities and it must be shown further that the owner knew of such propensities and that the injury complained of resulted therefrom." *Wells v. Beach*, 315 S.E.2d 23 (Ga. App. 1984) (citing *Connell v. Bland*, 177 S.E.2d 833 (1970)). Stated another way, "a dog owner's liability must be predicated solely upon his knowledge that the errant animal has the propensity to cause the specific type of harm from which the cause of action arises." *Wells*, 315 S.E.2d at 23. Consequently, "[t]he question in each case is whether the notice was sufficient to put the owner on his guard and to require him, as an ordinarily prudent man, to anticipate the injury which has actually occurred." 13 AM. JUR. 2D Knowledge of Animal's Vicious Propensities § 3.

*Id.* at *6. The only evidence submitted by the plaintiffs was testimony from witnesses who had observed the dog "jumping on and scratching people." *Id.* at *7. Each witness, however, "noted that the dog was simply not acting dangerous or aggressive on the day of the incident," and the plaintiffs presented no evidence that the dog had previously acted dangerously or aggressively. *Id.* Thus, the court concluded that the plaintiffs' evidence was insufficient to show that the dog's owners "were on notice, constructive or actual, that their dog would bite [the plaintiffs'] son." *Id.*

To be clear, the propensity evidence produced in *Searcy* showed that the dog had a propensity to jump on and scratch people. Implicit in the *Searcy* court's decision is the conclusion that this evidence showed that the dog had a propensity for playfulness or mischievousness. *See id.* at *7. Generally, courts have held that the term "dangerous propensity" encompasses acts done by a dog "that are dangerous from playfulness or mischievousness," *Moore*, 2015 WL 9584389, at *4, but the injuries caused by those acts typically result from being scratched or being knocked down by the dog rather than from being bitten. *See generally Alex v. Armstrong*, 385 S.W.2d 110, 112 (Tenn. 1964) (involving an injury caused by being knocked down by a playing dog). That is why the *Searcy* court concluded that the evidence produced by the plaintiffs was not sufficient to put the dog's owners on guard to anticipate that the dog had the propensity "'to do harm of the type that it inflict[ed]'"—biting the plaintiffs' son. *Fletcher*, 603 S.W.2d at 735 n.1 (quoting RESTATEMENT, SECOND, OF TORTS § 509, comment g at 17-18 (1977)).

Here, unlike in *Searcy*, the evidence produced by Ms. Munoz shows that the dog had a propensity for dangerousness or aggressiveness because Mr. Sepulveda stated that Suki was protective of his other animals and "didn't know how to be with other people." Additionally, in her declaration, Ms. Mendoza stated that the dog had growled at her and showed its teeth at her "in an aggressive manner" when she approached the fenced-in area where the animals were kept. This is the type of evidence that the *Searcy* court noted other courts had found sufficient to hold that a dog owner had knowledge or should have had knowledge that his or her dog was vicious and might bite someone. *Searcy*, 2017 WL

4743111, at *7 (stating that "there was a genuine issue of material fact as to whether the dog owner knew o[r] should have known of dog's vicious propensities because 'upon each of [the child's] two arrivals at the defendant's home, the dog growled, barked, snarled, and bared its teeth directly at her and her family'") (quoting *Dykeman v. Heht*, 52 A.D.3d 767, 769-70 (N.Y. App. Div. 2008)).

Evidence such as that submitted by Ms. Munoz is also the type of evidence that the Tennessee Supreme Court has stated would be sufficient to establish that a dog owner knew or had reason to know that the dog had a propensity to bite. In 1980, our Supreme Court explained as follows:

> "A dog is not necessarily regarded as entitled to one bite. It is enough that the possessor of the animal knows that it has on other occasions exhibited such a tendency to attack human beings or other animals or otherwise to do harm as should apprise him of its dangerous character. Thus, the fact that a dog has to his knowledge unsuccessfully attempted to attack human beings or other animals is sufficient. . . . Sufficient also is any form of ill temper displayed in the presence of animal or beast that would apprise a reasonable person that the animal if uncontrolled would make an attack."

*Fletcher*, 603 S.W.2d at 735 n.1 (quoting RESTATEMENT, SECOND, OF TORTS § 509, comment g at 17-18 (1977)). We, therefore, reject Mr. Sepulveda's argument that the propensity evidence presented by Ms. Munoz is insufficient to create a genuine issue of material fact as to whether her injury was a consequence of the dog's dangerous propensity to bite strangers.

In sum, viewing all of the statements identified by Ms. Munoz in the light most favorable to her as the nonmoving party, we must conclude that the totality of the evidence[2] raises a genuine doubt about Mr. Sepulveda's credibility. This Court has previously held that "doubt as to the credibility of material witnesses will create a genuine issue of material fact sufficient to render granting a summary judgment improper." *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936, 942 (Tenn. Ct. App. 1984). After discussing how federal courts construe the federal counterpart to Tenn. R. Civ. P. 56, the *Knapp* court explained as follows:

> Our courts have also equated motions for summary judgments pursuant to Tenn. R. Civ. P. 56 with motions for directed verdicts. *Bennett v. Mid-South Terminals Corp.*, 660 S.W.2d 799, 800 (Tenn. Ct. App. 1983).

---

[2] Ms. Munoz presents the alternative argument that Ms. Mendoza's declaration alone is sufficient to create a genuine dispute of material fact. Given that she produced additional evidence and that we have determined that the evidence as a whole created a genuine dispute of material fact, we need not consider this argument.

Under state law, a directed verdict should not be granted if there is any doubt about the conclusions to be drawn from the evidence. *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn. 1982) and *Redding v. Conally Ford, Inc.*, 662 S.W.2d 938, 942 (Tenn. Ct. App. 1983). Uncontradicted evidence will not entitle a party to a directed verdict, and by analogy to a summary judgment, when the credibility of the evidence has been called into question using one of the legal modes available to test the credibility of witnesses. *Curtis v. Kelsey Wheel Co.*, 77 S.W.2d 449, 449-50 (Tenn. 1935); *Standard Oil Co. of Louisiana v. Roach*, 94 S.W.2d 63, 71 (Tenn. 1936); and *Sprankle v. Meyernick*, 4 Tenn. Civ. App. 515, 520 (1913).

*Id.* at 942-43 (footnote omitted).

The trial court based its determination on Mr. Sepulveda's testimony that he did not know or have reason to know that the dog had a dangerous propensity to bite. Ms. Munoz, however, squarely challenged Mr. Sepulveda's credibility in her response to the motion for summary judgment and sufficiently called his credibility into question to create a genuine issue of material fact. Therefore, we reverse the trial court's decision granting summary judgment.

CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellee, Jose Sepulveda, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE